# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

SHERI L. SCHUMANN TAX & ACCOUNTING, INC.; THE ZION EVANGELICAL LUTHERAN CHURCH OF BAY CITY, MICHIGAN,

       Plaintiffs,

v

TCF NATIONAL BANK; JOHN DOES 1-10,

       Defendants.

Case No.:  1:20-cv-12924
Hon.:  Thomas Ludington
Mag.:  Patricia Morris

---

John Di Giacomo (P73056)
Amanda Osorio (P79006)

Revision Legal, PLLC
Suite D
444 Cass St.
Traverse City, Michigan 49684
(231) 714-0100
john@revisionlegal.com
amanda@revisionlegal.com

*Attorneys for Plaintiffs*

Andrea J. Bernard (P49209)
Jonathan Lauderbach (P51313)
Katherine L. Pullen (P74511)

WARNER NORCROSS + JUDD LLP
Suite 1500
150 Ottawa Ave., NW
Grand Rapids, Michigan 49503
(616) 752-2199
abernard@wnj.com
jlauderbach@wnj.com
kpullen@wnj.com
*Attorneys for Defendant TCF National Bank*

---

# DEFENDANT TCF NATIONAL BANK'S MOTION TO AMEND ITS PLEADINGS TO ADD COUNTERCLAIMS

Defendant TCF National Bank ("TCF"), by its undersigned counsel, hereby moves the Court pursuant to Fed. R. Civ. P. 15 for leave to amend TCF's pleadings to add counterclaims for indemnification against Plaintiffs Sheri L. Schumann Tax & Accounting, Inc. and Zion Evangelical Lutheran Church of Bay City, Michigan. As required by Local Rule 7.1, TCF sought concurrence from Plaintiffs' counsel on September 14, 2021, but Plaintiffs' counsel did not respond.  Thus, TCF files the current Motion and accompanying Brief in Support.

WHEREFORE, in view of the foregoing, and based on the authorities set forth in the incorporated Brief in Support of the Motion, TCF respectfully asks the Court to grant this Motion to Amend TCF's Pleadings to Add Counterclaims.

Dated: September 17, 2021

/s/*Katherine L. Pullen*
Andrea J. Bernard (P49209)
WARNER NORCROSS + JUDD LLP
150 Ottawa Ave. NW, Ste. 1500
Grand Rapids, Michigan 49503
(616) 752-2199
abernard@wnj.com
Jonathan Lauderbach (P51313)
715 E. Main Street, Suite 110
Midland, MI 48640-5382
989-698-3700
jlauderbach@wnj.com
Katherine L. Pullen (P74511)
2715 Woodward Ave., Ste. 300
Detroit, MI 48201
313-546-6000
kpullen@wnj.com
*Counsel for Defendant TCF National Bank*

1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

SHERI L. SCHUMANN TAX &
ACCOUNTING, INC.; THE ZION
EVANGELICAL LUTHERAN
CHURCH OF BAY CITY,
MICHIGAN,

      Plaintiffs,

v

TCF NATIONAL BANK; JOHN
DOES 1-10,

      Defendants.

Case No.:  1:20-cv-12924
Hon.:  Thomas Ludington
Mag.:  Patricia Morris

John Di Giacomo (P73056)
Amanda Osorio (P79006)

Revision Legal, PLLC
Suite D
444 Cass St.
Traverse City, Michigan 49684
(231) 714-0100
john@revisionlegal.com
amanda@revisionlegal.com


*Attorneys for Plaintiffs*

Andrea J. Bernard (P49209)
Jonathan Lauderbach (P51313)
Katherine L. Pullen (P74511)

WARNER NORCROSS + JUDD LLP
Suite 1500
150 Ottawa Ave., NW
Grand Rapids, Michigan 49503
(616) 752-2199
abernard@wnj.com
jlauderbach@wnj.com
kpullen@wnj.com
*Attorneys for Defendant TCF National
Bank*

## BRIEF IN SUPPORT OF DEFENDANT TCF NATIONAL BANK'S
## MOTION TO AMEND ITS PLEADINGS TO ADD COUNTERCLAIMS

## ISSUES PRESENTED

I.  Are TCF's proposed counterclaims for indemnification futile where Plaintiffs agreed to indemnify TCF in exchange for the use of TCF's services; the indemnification provisions clearly obligate Plaintiffs to pay TCF's attorney's fees, costs, and expenses in this action because Plaintiffs did not comply with various required and recommended security procedures, among other reasons; and TCF performed its obligations under the parties' agreements?

TCF's Answer:     No.

II.  Is there any substantial reason to deny TCF leave to amend its pleadings to add counterclaims where the deadline for fact discovery is over two months away; there is a significant degree of factual overlap between the proposed counterclaims and the underlying litigation; and requiring TCF to refile the claims in a separate lawsuit would needlessly expend judicial resources?

TCF's Answer:     No.

## MOST RELEVANT AUTHORITIES

*Black Hills Excavating Servs., Inc. v. Retail Const. Servs., Inc.*, 877 N.W.2d 318 (S.D. 2016).

*Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828 (6th Cir. 1999).

*Wade v. Knoxville Utilities Bd.*, 259 F.3d 452 (6th Cir. 2001).

# TABLE OF CONTENTS

ISSUES PRESENTED ................................................................................i

MOST RELEVANT AUTHORITIES ....................................................ii

TABLE OF CONTENTS .........................................................................iii

INDEX OF AUTHORITIES ....................................................................iv

INTRODUCTION ..................................................................................... 1

BACKGROUND ....................................................................................... 3

    I.      The Banking Services Offered by TCF ................................ 3

    II.    The Plaintiffs' Accounts at TCF ......................................... 5

    III.   The Fraudulent ACH Transfers ........................................... 7

    IV.   Plaintiffs' Responsibility for the Transfers at Issue ............ 8

    V.     The Underlying Litigation ................................................. 10

    VI.   The Proposed Counterclaims and the Underlying Indemnity
          Provisions ........................................................................ 10

        A.    *The Indemnification Provisions Underlying Counts I, III, and IV* .................................................................................. 11

        B.    *The Indemnification Provision Underlying Count II* ............... 13

APPLICABLE LAW ............................................................................. 14

ARGUMENT .......................................................................................... 15

    I.      TCF's Counterclaims Are Not Futile .............................. 15

    II.    There Is No Substantial Reason to Deny Leave to Amend ................. 19

CONCLUSION ...................................................................................... 21

# INDEX OF AUTHORITIES

**Page(s)**

## Cases

*Authorized Integrators Network, LLC v. Wirepath Home Sys., LLC,*
  No. 13-10414, 2013 WL 3179505 (E.D. Mich. June 20, 2013) ........................ 17

*Black Hills Excavating Servs., Inc. v. Retail Const. Servs., Inc.,*
  877 N.W.2d 318 (S.D. 2016) ............................................................. 17

*Brege v. Lakes Shipping Co.,*
  225 F.R.D. 546 (E.D. Mich. 2004) ...................................................... 14

*Duggins v. Steak 'N Shake, Inc.,*
  195 F.3d 828 (6th Cir. 1999) ........................................................... 15

*Emps. Ins. Co. of Wausau v. Duro-Last Roofing, Inc.,*
  No. 11-10206-BC, 2011 WL 5039799 (E.D. Mich. Oct. 24, 2011)
  (Ludington, J.) .......................................................................... 14

*Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.,*
  470 F.3d 1036 (11th Cir. 2006) ........................................................ 14

*Fox v. Massey-Ferguson, Inc.,*
  172 F.R.D. 653 (E.D. Mich. 1995) ...................................................... 14

*Friedl v. City of New York,*
  210 F.3d 79 (2d Cir. 2000) ............................................................. 14

*Hurvenich v. ArvinMeritor, Inc.,*
  No. 10-10278, 2011 WL 3359653 (E.D. Mich. Aug. 4, 2011) ........................ 20

*Larry v. Kelly Servs., Inc.,*
  No. 20-CV-11481, 2021 WL 2548906 (E.D. Mich. June 22, 2021) ................. 20

*Lawson v. Truck Drivers, Chauffeurs & Helpers, Loc. Union 100,*
  698 F.2d 250 (6th Cir. 1983) ........................................................... 21

*Markley v. Honda of Am. Mfg, Inc.,*
  No. 2:04-CV-826, 2005 WL 8161978 (S.D. Ohio June 29, 2005) ................... 20

*Oakwood Hosp. & Med. Ctr. v. Goodwin Elecs.,*
    183 F. Supp. 2d 936 (E.D. Mich. 2001) ............................................................16

*PCL Const. Servs., Inc. v. B & H Contractors of S. Dakota, Inc.,*
    No. CIV. 10-4076, 2013 WL 1866922 (D.S.D. May 2, 2013)...........................16

*Riverview Health Inst., LLC v. Med. Mut. of Ohio,*
    601 F.3d 505 (6th Cir. 2012) .............................................................................16

*Rogers v. Broder & Sachse Real Est. Servs. Inc.,*
    No. 14-CV-11084, 2014 WL 4772715 (E.D. Mich. Sept. 24, 2014) ..........*passim*

*Sazerac Brands, LLC v. Peristyle, LLC,*
    No. 3:15-CV-76-GFVT-EBA, 2017 WL 7805582 (E.D. Ky. Jan.
    25, 2017) ............................................................................................................20

*Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.,*
    No. CIV.A. 07-12250, 2008 WL 251985 (E.D. Mich. Jan. 30,
    2008) ..................................................................................................................20

*Wade v. Knoxville Utilities Bd.,*
    259 F.3d 452 (6th Cir. 2001) .....................................................................14, 20

## Statutes

Michigan Compiled Laws, §§ 440.4601, *et seq.* ...................................................10

## Other Authorities

Fed. R. Civ. P. 12(b)(6)..........................................................................................15

Fed. R. Civ. P. 15 ...................................................................................................14

Fed. R. Civ. P. 15(a)(2)..........................................................................................14

**INTRODUCTION**

This case concerns Automated Clearing House ("ACH") transfers from accounts held by Plaintiffs Sheri L. Schumann Tax & Accounting, Inc. ("Schumann Tax") and Zion Evangelical Lutheran Church of Bay City Michigan ("Zion") at Defendant TCF National Bank ("TCF"). Sheri Schumann ("S.Schumann"), a licensed Enrolled Agent, owns and operates Schumann Tax. Approximately 20 years ago, Schumann Tax opened business and client trust accounts at Chemical Bank, and in 2007, enrolled in ACH treasury management services. Schumann Tax provides accounting and payroll services to Zion. Zion also had an account at Chemical Bank and enrolled in ACH treasury management services in 2018. S.Schumann was the administrator and authorized signer on both Schumann Tax's and Zion's accounts. In August 2020, Chemical Bank completed its merger with TCF, and the Schumann Tax and Zion Chemical Bank accounts became TCF accounts. Both Zion and Schumann Tax accepted TCF's updated terms and conditions associated with, among other things, treasury management services and online banking, *i.e.*, Business eBanking, or "BeB."

On September 15, 2020, an unknown person logged into Schumann Tax's BeB from Schumann Tax's IP address, using S.Schumann's login credentials. This unknown person added a new phone number for purposes of out-of-band

authentication.[1] When this new phone number was added on September 15, 2020, two alerts were sent to S.Schumann's email, notifying her that her user profile had been changed and a new phone number added. Over the next 12 days, a series of ACH transfers were electronically initiated from Schumann Tax's accounts using online BeB tools. During that period, the same new phone number was also added to Zion's BeB, again by someone using S.Schumann's login credentials and Schumann Tax's IP address.[2] Several of these ACH transfers resulted in returned funds and, each time, additional alerts went out to S.Schumann notifying her of the activity.

Despite receiving numerous email alerts and having unlimited access to view Zion's and Schumann Tax's banking profiles, Plaintiffs failed to notify the bank of the questionable ACH transfers for nearly two weeks. Once alerted, TCF began recovery efforts and cooperated with law enforcement. Had TCF been alerted sooner, most, if not all, of the ACH transfers at issue may have been prevented or recovered. Moreover, TCF highly recommended additional security measures to Plaintiffs in connection with their use of electronic banking services, but Plaintiffs declined.

---

[1] Out-of-band authentication is a security measure that requires a user to enter a unique passcode to confirm authentication in certain circumstances. Because of the change, however, the passcodes were sent to the new phone number, thus allowing the unknown individual to freely access the accounts.

[2] Schumann Tax's IP address was associated with Zion's BeB.

Plaintiffs commenced this action on October 30, 2020, by filing a Complaint against various John Does. (*See* Dkt. No. 1, Complaint.) On February 17, 2021, Plaintiffs filed an Amended Complaint, adding TCF as a defendant. (*See* Dkt. No. 6, Amended Complaint.) Plaintiffs assert two claims against TCF, seeking to recover damages stemming from the subject ACH transfers. TCF now moves to amend its pleadings to add counterclaims for indemnification against both Plaintiffs, based on indemnification provisions to which Plaintiffs agreed in exchange for the use of TCF's services. A copy of TCF's proposed counterclaims is attached as **Exhibit 1**. The gravamen of the counterclaims is that the indemnification provisions obligate Plaintiffs to pay TCF's attorney's fees, costs, and expenses in this action because Plaintiffs did not comply with various required and recommended security procedures, among other reasons. The Court should grant the motion because the counterclaims are plausibly alleged, and there is no substantial reason to deny leave to amend.

## BACKGROUND

### I. The Banking Services Offered by TCF

At all relevant times, TCF was a national banking association, with its principal place of business in South Dakota. (Ex. 1, Proposed Counterclaims ¶ 3.)[3]

---

[3] The Court must accept the factual allegations in the proposed counterclaims as true for the purposes of the motion to amend. *See Rogers v. Broder & Sachse Real Est. Servs. Inc.*, No. 14-CV-11084, 2014 WL 4772715, at *1 (E.D. Mich. Sept. 24, 2014).

In August 2020, TCF finalized its merger with Chemical Bank, and Chemical Bank accounts became TCF accounts. (*Id.* ¶ 19.)

During the relevant timeframe, TCF and Chemical Bank offered various banking services to their business customers through an online platform known as Business eBanking ("BeB"). (*Id.* ¶ 10; *see also id.* ¶¶ 17, 22.) BeB allowed customers to view and manage their accounts online and to utilize treasury management services, such as electronic transfers of funds using the ACH network. (*Id.* ¶ 11.)

In connection with these services, TCF employed various security procedures,[4] including multi-factor security, which required both specific login credentials and out-of-band authentication to initiate ACH transactions. (*Id.* ¶ 12.) In addition, TCF's system automatically generated and sent alerts to users whenever their demographic information was changed. (*Id.* ¶ 36.) TCF's system also generated alerts when ACH transfers were returned by the receiving banks. (*Id.* ¶ 42.)

TCF further offered and highly recommended dual authorization for ACH transfers. (*Id.* ¶ 48(c).) Dual authorization requires authorization by two different users, meaning that one user must initiate the transfer using standard security protocols and the second user must approve the transfer using standard security

---

[4] The security procedures agreed to by the parties are set forth in the agreement attached to TCF's proposed counterclaims as Exhibit A.

4

protocols. (*Id.*) TCF also permitted BeB users to register multiple email accounts to receive alerts regarding their accounts. (*Id.* ¶ 48(d).)

## II.   The Plaintiffs' Accounts at TCF

Schumann Tax is a Michigan corporation that offers tax and accounting services to customers. (*Id.* ¶¶ 1, 7.) Schumann Tax is owned and operated by Sheri L. Schumann ("S.Schumann"), a licensed Enrolled Agent. (*Id.* ¶ 7.) One of Schumann Tax's customers is Zion, a Lutheran church and school located in Bay City, Michigan. (*Id.* ¶ 6.) Schumann Tax has provided tax and accounting services to Zion since at least the year 2000. (*Id.* ¶ 8.)

The banking relationship underlying this litigation originated when Schumann Tax and Zion opened accounts with Chemical Bank in the early 2000s. Specifically, in 2000, Schumann Tax opened a client trust account and a business account at Chemical Bank (together, the "Schumann Tax Accounts"). (*Id.* ¶ 16.) And, in 2003, Zion opened a business account at Chemical Bank (the "Zion Account"). (*Id.* ¶ 21.)

Prior to the merger between Chemical Bank and TCF, Schumann Tax enrolled the Schumann Tax Accounts in online BeB services ("Schumann Tax BeB") and Treasury Management Services, including ACH transactions. (*Id.* ¶ 17.) Zion likewise enrolled the Zion Account in online BeB services ("Zion BeB") and Treasury Management Services. (*Id.* ¶¶ 22, 25.)

Schumann Tax and Zion both entrusted the administration of their Chemical Bank accounts to S.Schumann. (*See id.* ¶¶ 18, 23–24, 46.) Both Plaintiffs identified S.Schumann as an authorized signer for their respective accounts. (*Id.* ¶¶ 18, 24.) Both Plaintiffs also identified S.Schumann as the Company Administrator and registered her email address (the "Schumann Email Address"), as the sole email address for Schumann Tax BeB and Zion BeB. (*Id.* ¶¶ 18, 24, 36, 38, 48(d).) In addition, the Zion Account was added to Schumann Tax BeB, which gave Schumann Tax the ability to view and manage the Zion Account and initiate Zion Account ACH transactions through Schumann Tax BeB. (*Id.* ¶ 23.)

Following TCF's merger with Chemical Bank, the Schumann Tax Accounts and the Zion Account became TCF accounts. (*Id.* ¶¶ 19, 26.) In order to enroll in and utilize TCF's online banking tools, Plaintiffs accepted and agreed to follow TCF's BeB Terms and Conditions ("BeB Agreement T&Cs") and TCF's Treasury Management Services Terms and Conditions ("TM Services Agreement T&Cs"), both of which contain various written indemnity provisions that apply here. (*Id.* ¶¶ 13–14, 20, 27–34.) In short, these indemnity provisions require the customer to indemnify and hold TCF harmless when, among other circumstances, a loss results from the customer's failure to comply with required and recommended security procedures. (*Id.* ¶¶ 28–34.) In August 2020, S.Schumann accepted the BeB

Agreement T&Cs and the TM Services Agreement T&Cs, including the indemnity provisions, on behalf of both Schumann Tax and Zion. (*Id.* ¶¶ 20, 27.)

## III.   The Fraudulent ACH Transfers

Schumann Tax and Zion allege that, between September 15, 2020 and September 28, 2020, a security breach associated with the Schumann Tax Accounts and Zion Account resulted in a series of fraudulent ACH transfers from those accounts. (*Id.* ¶¶ 35–44, 49–50.) Upon information and belief, each of the allegedly fraudulent transfers was caused by (a) an individual or individuals who accessed Schumann Tax BeB and Zion BeB at the Schumann Tax office, and/or (b) malware installed on a computer at the Schumann Tax office, which enabled the individual or individuals to access the Schumann Tax computer from an offsite location. (*See id.* ¶¶ 45–47.)

On September 15, 2020, an individual logged into Schumann Tax BeB from the IP address associated with Schumann Tax, using S.Schumann's username and password, and added a new phone number for purposes of out-of-band authentication. (*Id.* ¶¶ 35, 46.) From September 15, 2020 through September 28, 2020, S.Schumann's login credentials were then used to initiate a total of ten ACH transfers from Schumann Tax BeB at a rate of no more than one ACH transfer initiated per day (the "Schumann Tax ACH Transfers"). (*Id.* ¶¶ 39, 47.) Of the Schumann Tax ACH Transfers, three directed that funds be transferred from the

7

Schumann Tax Accounts, and seven directed that funds be transferred from the Zion Account. (*Id.* ¶ 40.)

Similarly, on September 23, 2020, an individual logged onto Zion BeB from the IP address associated with Schumann Tax, using S.Schumann's login credentials, and then added to the Zion Account for out-of-band authentication the same phone number that had been added to the Schumann Tax Accounts. (*Id.* ¶¶ 37, 46.) From September 23 through September 28, 2020, S.Schumann's login credentials were used to initiate a total of four ACH transfers from Zion BeB at a rate of no more than one ACH transfer per day (the "Zion ACH Transfers"). (*Id.* ¶¶ 41, 46.)

The amounts of the Schumann Tax ACH Transfers and Zion ACH Transfers were at or below the daily limit for ACH initiations on those accounts. (*Id.* ¶ 43.)

## IV. Plaintiffs' Responsibility for the Transfers at Issue

Schumann Tax and Zion first notified TCF of the alleged fraud on the afternoon of September 28, 2020, when S.Schumann visited TCF's branch in Bay City and advised TCF that one or more of the Schumann Tax ACH Transfers and/or the Zion ACH Transfers were unauthorized. (*Id.* ¶¶ 44, 48(b).) However, Schumann Tax and Zion received multiple notices that should have alerted them to the allegedly fraudulent activity far sooner, starting on September 15, 2020. (*See id.* ¶¶ 36, 38, 42.) First, on September 15, 2020, TCF's system sent automatic alerts to the

8

Schumann Email Address regarding the addition of a new phone number to the Schumann Tax BeB. (*Id.* ¶ 36.) Likewise, on September 23, 2020, TCF's system sent alerts to the Schumann Email Address regarding the addition of a new phone number to the Zion BeB. (*Id.* ¶ 38.) Also, seven of the Zion ACH Transfers and the Schumann Tax ACH Transfers were returned by the receiving banks, which resulted in additional alerts being sent to the Schumann Email Address. (*Id.* ¶ 42.)

Plaintiffs also had unlimited access to review their online accounts between September 15, 2020 and September 28, 2020. (*Id.* ¶ 48(b).) And the administrator of their accounts, S.Schumann, logged into the Schumann Tax BeB and Zion BeB during that period, yet failed to notify TCF of the alleged fraud until nearly two weeks after it began. (*Id.*)

In addition, Schumann Tax and Zion declined to use certain security precautions, including requiring dual authorization and registering multiple email addresses, despite TCF's recommendations. (*Id.* ¶ 48(c)–(d).) Upon information and belief, both Plaintiffs also breached the TM Services Agreement T&Cs and the BeB T&Cs by, among other things, failing to adequately screen their systems using anti-virus software. (*Id.* ¶¶ 90, 108.)

## V.    The Underlying Litigation

In their Amended Complaint, Plaintiffs seek to recover, among other damages, their net losses stemming from the subject ACH transfers. (*Id.*) The Amended Complaint includes the following claims against TCF: Count IV, Violation of Michigan Compiled Laws, §§ 440.4601, *et seq.*; and Count V, Negligence. (*See id.*) TCF denies that it is liable to Schumann Tax and Zion. (*See* Dkt. No. 10, Answer and Affirmative Defenses.)

The parties are currently engaged in fact discovery, which is scheduled to end on November 26, 2021. (*See* Dkt. No. 25, Stipulated Order Extending Discovery.) The deadline for dispositive motions is December 27, 2021, and trial is scheduled for April 19, 2022. (*See* Dkt. No. 16, Case Management and Scheduling Order.)

## VI.    The Proposed Counterclaims and the Underlying Indemnity Provisions

TCF seeks to amend its pleading to add four counterclaims for indemnification with respect to attorney's fees, costs, and expenses incurred in this litigation. (*See* Ex. 1, Proposed Counterclaims ¶¶ 52–114.) Counts I and II are indirect indemnity claims against Schumann Tax. (*Id.* ¶¶ 52–81.) Count III is a direct indemnity claim against Schumann Tax. (*Id.* ¶¶ 82–96.) And Count IV is a direct indemnity claim against Zion. (*Id.* ¶¶ 97–114.) The provisions underlying each counterclaim are described below.

10

A.    *The Indemnification Provisions Underlying Counts I, III, and IV*

Counts I, III, and IV are each predicated on three independent indemnification

provisions in the TM Services Agreement T&Cs that both Plaintiffs accepted: Part

II, § 4.7; Part II, § 10.4; and Part IV, § 2.14. (*Id.* ¶¶ 52–71, 82–114.)

Part II, § 4.7 of the TM Services Agreement T&Cs addresses "Liability for

failure to Maintain Security Procedures," and provides in relevant part:

> If [Zion/Schumann Tax] does not comply with all recommended and
> required Security Procedures or this Section 4, [Zion/Schumann Tax]
> agrees that [Zion/Schumann Tax] . . . shall defend, indemnify and hold
> harmless [TCF] and [TCF]-Related Parties from and against any and all
> Losses incurred by any of them by reason of, arising directly or
> indirectly out of, or in connection with any claim, allegation or assertion
> made by [Zion/Schumann Tax] or any Third Party with respect to,
> caused by or arising from [Zion/Schumann Tax]'s failure to comply
> with the recommended and required Security Procedures. . . .

(Ex. 1, Proposed Counterclaims, Ex. A, TM Services Agreement T&Cs, Part II, §

4.7.) Zion is a "Third Party" to the TM Services Agreement T&Cs between

Schumann Tax and TCF. (Ex. 1, Proposed Counterclaims ¶¶ 56–57.) The definition

of "Losses" includes:

> . . . costs, expenses and fees of any kind including, but not limited to,
> reasonable attorneys' fees, expert fees, court costs, adjusters fees and
> any other expenses incurred in connection with any claim or proceeding
> (civil, criminal, administrative or investigative), arbitrations, . . .

(Ex. 1, Proposed Counterclaims, Ex. A, TM Services Agreement T&Cs, Part

I, § 2.) And "Security Procedures" refers to:

> the 'Security Procedures' attached as Exhibit 2 [to the TM Services Agreement T&Cs], incorporated by reference, and also located on the Forms and Documents page in Business eBanking, as supplemented by [Zion/Schumann Tax]'s current security designations, all other security procedures contained in the Account Contract, and all other measures implemented, recommended or required by [TCF] from time to time to help safeguard access to and use of Accounts, Services, and Digital Banking.

(*Id.*)

Part II, § 10.4 of the TM Services Agreement T&Cs contains an additional indemnification provision, which states in pertinent part:

> [Zion/Schumann Tax] agrees to indemnify, defend and hold [TCF] and [TCF]-Related Parties, individually and collectively, harmless from and against all Losses, which result directly or indirectly, in whole or in part, from: (i) disputes or legal actions by parties other than [Zion/Schumann Tax] and [TCF] concerning a Service; (ii) [TCF]'s providing of the Service(s) to [Zion/Schumann Tax], which is in compliance with the Agreement; . . . and/or (iv) [Zion/Schumann Tax]'s breach of any provision of the Agreement, including, but not limited to, any of the representations or warranties made by [Zion/Schumann Tax] in the Agreement. . . .

(*Id.* at § 10.4.) Part I, § 2 of the TM Services Agreement T&Cs defines "Service" as "the treasury management service or services described in these Terms and Conditions, which [TCF] may provide from time to time to its business customers and that [Zion/Schumann Tax] uses in connection with any of its Accounts." (*Id.* at Part I, § 2.)

Part IV, § 2.14 of the TM Services Agreement T&Cs contains an additional indemnification provision. Pursuant to that provision, Zion and Schumann Tax

agreed that if they failed to "maintain information security controls and standards that meet the minimum requirements of the NACHA [National Automated Clearing House Association] Security Requirements and the Security Procedures":

> [Zion/Schumann Tax] shall defend, protect, indemnify and hold harmless [TCF] and [TCF]-Related Parties from and against any and all Losses suffered, incurred by or made against any of them by reason of, arising directly or indirectly out of, or in connection with any claim, allegation or assertion made by [Zion/Schumann Tax] or any Third Party with respect to, caused by or growing out of [Zion/Schumann Tax]'s failure to maintain information security controls and standards that meet the minimum requirements of the NACHA Security Requirements and the Security Procedures.

(*Id.* at Part IV, § 2.14.)

B.     *The Indemnification Provision Underlying Count II*

The remaining counterclaim—Count II—is based on the indemnification provision in the BeB Agreement T&Cs, § 15. (*Id.* ¶¶ 72–81.) Section 15 of the BeB Agreement T&Cs provides, in pertinent part, that Schumann Tax will:

> indemnify, defend and hold harmless [TCF] from and against any and all actions, suits, claims, damages, losses, liabilities, penalties, assessments, charges, taxes, costs and expenses (including reasonable attorneys' fees, costs of investigation and court costs at the trial level and in any appeal) (together, the 'Losses') directly or indirectly arising from or relating to . . . (iv) the failure of [Schumann Tax] (or its employees, agents, affiliates or representatives) to comply with its obligations in this Agreement or the Account Contract, including [Schumann Tax]'s failure to observe, maintain or comply with the Security Procedures, . . . (vii) other acts or omissions of [Schumann Tax] (including its affiliates, agents, employees and representatives) or any third party which create, lead to or result in claims, liability, damages, costs or expenses, . . . or (viii) any action taken or omitted to be taken . . . by anyone using the login credentials of Users; provided,

13

however, that [Schumann Tax] shall not be obligated to indemnify [TCF] for any Losses that are caused directly by [TCF]'s gross negligence, willful misconduct or bad faith.

(*Id.* at Exhibit 1, BeB Agreement, § 15.)

## APPLICABLE LAW

Amendments to add counterclaims are governed by Rule 15 of the Federal Rules of Civil Procedure. *Brege v. Lakes Shipping Co.*, 225 F.R.D. 546, 549 (E.D. Mich. 2004); *see also Emps. Ins. Co. of Wausau v. Duro-Last Roofing, Inc.*, No. 11-10206-BC, 2011 WL 5039799, at *6 (E.D. Mich. Oct. 24, 2011) (Ludington, *J.*).[5] Rule 15 provides that "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. 15(a)(2), creating a "general presumption in favor of allowing a party to amend its pleadings." *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 656 (E.D. Mich. 1995). "'Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'" *Rogers v. Broder & Sachse Real Est. Servs. Inc.*, No. 14-CV-11084, 2014 WL 4772715, at *1 (E.D. Mich. Sept. 24, 2014) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)); *accord, e.g., Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1041 (11th Cir. 2006); *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000).

---

[5] All unpublished opinions are attached as **Exhibit 2**.

Grounds for denying leave to amend may include: "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment . . . ." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458 (6th Cir. 2001) (citation omitted). However, delay alone, "regardless of its length," is not sufficient to bar amendment. *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (citation omitted). A court must find "at least some significant showing of prejudice to the opponent." *Id.* (citation omitted).

## ARGUMENT

The Court should grant TCF's motion to amend its pleadings because amendment would not be futile, and the remaining factors do not overcome the presumption in favor of amendment.

## I.   TCF's Counterclaims Are Not Futile

TCF's counterclaims for direct and indirect indemnification are not futile. A proposed amendment is futile if "the amendment could not withstand a rule 12(b)(6) motion to dismiss." *Riverview Health Inst., LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2012). Accordingly, the proposed counterclaims are not futile if their factual allegations "raise a right of relief above the speculative level and [] state a claim to relief that is plausible on its face." *Rogers*, 2014 WL 4772715, at *1 (internal quotation marks and citations omitted). In making this determination, the

15

court must construe the counterclaims in the "light most favorable to [TCF], and accept all well pled factual allegations as true." *Id.*

South Dakota[6] law permits claims for indemnification based on an express contract. *See, e.g., PCL Const. Servs., Inc. v. B & H Contractors of S. Dakota, Inc.*, No. CIV. 10-4076, 2013 WL 1866922, at *5 (D.S.D. May 2, 2013) (applying South Dakota law); *see also Oakwood Hosp. & Med. Ctr. v. Goodwin Elecs.*, 183 F. Supp. 2d 936, 941 (E.D. Mich. 2001) (applying Michigan law). Indemnity provisions are "to be construed according to the clear and unequivocal expression of the parties' intent embodied in the ordinary meaning of the words used." *PCL Const. Servs.*, 2013 WL 1866922, at *5 (citation omitted) (applying South Dakota law); *accord, e.g., Oakwood Hosp.*, 183 F. Supp. 2d at 941 ("[Under Michigan law,] [a] right to indemnification can arise from an express contract, in which one of the parties has clearly agreed to indemnify the other.").

Consistent with that principle, South Dakota permits claims for indirect indemnity—*i.e.*, "indemnity when third parties bring an action against the indemnitee"—and direct indemnity—*i.e.*, indemnity "when the dispute is between the two contracting parties"—if the indemnification provision "clearly provides for

---

[6] The TM Services Agreement provides that disputes relating to that agreement or ACH services will be governed by federal law, and to the extent state law applies and is not preempted, the substantive and procedural law of South Dakota will apply. (Ex. 1, Proposed Counterclaims, Ex. A, TM Services Agreement T&Cs, Part II, § 12.)

and contemplates" both types of indemnification. *Black Hills Excavating Servs., Inc. v. Retail Const. Servs., Inc.*, 877 N.W.2d 318, 323–24 (S.D. 2016) (applying South Dakota law); *accord Authorized Integrators Network, LLC v. Wirepath Home Sys., LLC*, No. 13-10414, 2013 WL 3179505, at *3 (E.D. Mich. June 20, 2013) ("Michigan law recognizes that parties can, through broad language, contract for indemnification liability beyond that arising from third-party claims if such intent can be ascertained.").

Here, the indemnity provisions in the TM Services Agreement T&Cs clearly provide for and contemplate TCF's direct indemnity claims against Zion and Schumann Tax (Counts III and IV). For example, Part II, § 4.7 applies to "Losses incurred by [TCF] by reason of, arising directly or indirectly out of, or in connection with any claim, allegation or assertion made by [the other contracting party]. . . . caused by, or arising from [the other contracting party]'s failure to comply with the recommended and required Security Procedures." (Ex. 1, Proposed Counterclaims, Ex. A, TM Services Agreement T&Cs, Part II, § 4.7.) Part II, § 10.4 applies to "Losses, which result directly or indirectly, in whole or in part from: . . . (iv) [the contracting party]'s breach of any provision of the Agreement." (*Id.* at Part II, § 10.4.) And Part IV, § 2.14 applies to "Losses suffered, incurred by or made against [TCF] by reason of, arising directly or indirectly out of, or in connection with any claim, allegation or assertion made by [the contracting party] . . . . caused by or

17

growing out of [the contracting party]'s failure to maintain information security controls and standards . . . " (*Id.* at Part IV, § 2.14.)

Likewise, the indemnity provisions in the TM Services Agreement T&Cs and BeB Agreement T&Cs clearly provide for and contemplate the indirect indemnity claims against Schumann Tax (Counts I and II). (*See id.* at Part II, § 4.7 (applying to losses incurred in connection with "any claim, allegation or assertion made by . . . any Third Party . . . caused by or arising from [Schumann Tax]'s failure to comply with the recommended and required Security Procedures"); *id.* at Part II, § 10.4 (covering "disputes or legal actions by parties other than [Schumann Tax] and [TCF] concerning a Service"); *id.* at Part IV, § 2.14 (applying to losses incurred "in connection with any claim, allegation or assertion made by . . . any Third Party caused by or growing out of [Schumann Tax]'s failure to maintain information security controls and standards . . ."); *id.* at Exhibit 1, BeB Agreement, § 15 (applying when, among other circumstances, "acts or omissions of [Schumann Tax] (including its affiliates, agents, employees and representatives) . . . create, lead to or result in claims, liability, damages, costs or expenses").)

Each counterclaim is also supported by ample factual allegations, making them sufficient to withstand a motion to dismiss. *Rogers*, 2014 WL 4772715, at *1. Zion and Schumann Tax both agreed to the indemnity provisions at issue in exchange for valuable consideration—*i.e.,* use of the TM and BeB services. (*See*

Counterclaim ¶¶ 20, 27, 43, 73, 98.) For a full discussion of how Plaintiffs' acts and omissions warrant the application of these indemnity provisions, TCF respectfully refers the Court to its detailed counterclaims. (*See, e.g., id.* ¶¶ 48, 59, 65, 68–70, 78, 85, 90, 93–95, 102, 108, 111–13.) In short, however, Schumann Tax and Zion caused, in whole or in part, the transfers at issue and breached the applicable T&Cs by failing to monitor their accounts and to implement recommended security procedures. (*See id.* ¶¶ 36, 38, 42, 48, 90, 108.) TCF, meanwhile, performed its obligations under the TM Services Agreement T&Cs and BeB Agreement T&Cs. (*Id.* ¶¶ 54, 74, 99; *see also id.* ¶¶ 43, 81.) Accordingly, TCF's counterclaims for direct and indirect indemnification are plausible and not futile.

## II.    There Is No Substantial Reason to Deny Leave to Amend

The remaining factors do not overcome the presumption in favor of amendment. TCF provided notice of its counterclaims to Schumann Tax and Zion before filing this motion, and there is no evidence that TCF seeks to assert its counterclaims in bad faith. *Cf. Wade*, 259 F.3d at 458. TCF also has not previously asserted any counterclaims, so it has not "fail[ed] to cure deficiencies by previous amendments." *Id.*

As to prejudice, courts have typically found substantial prejudice "where the amendment is made after the discovery deadline has passed, or on the eve of trial." *Markley v. Honda of Am. Mfg, Inc.*, No. 2:04-CV-826, 2005 WL 8161978, at *1

19

(S.D. Ohio June 29, 2005) (internal quotation marks and citations omitted). By contrast, where discovery remains ongoing, courts typically have found no undue prejudice. *E.g., Larry v. Kelly Servs., Inc.*, No. 20-CV-11481, 2021 WL 2548906, at *2 (E.D. Mich. June 22, 2021) (finding no undue prejudice where amendment was sought prior to discovery deadline); *Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. CIV.A. 07-12250, 2008 WL 251985, at *3 (E.D. Mich. Jan. 30, 2008) (same). Other factors bearing on the prejudice inquiry include (1) the degree of "factual overlap" between the proposed amendment and the underlying litigation, *Sazerac Brands, LLC v. Peristyle, LLC*, No. 3:15-CV-76-GFVT-EBA, 2017 WL 7805582, at *2 (E.D. Ky. Jan. 25, 2017); and (2) the "additional discovery" that would be required due to the amendment. *Hurvenich v. ArvinMeritor, Inc.*, No. 10-10278, 2011 WL 3359653, at *2 (E.D. Mich. Aug. 4, 2011) (finding no prejudice where "additional discovery required [would] be limited").

Here, the deadline for fact discovery is over two months away, and trial is several months away. (*See* Dkt. No. 16, Case Management and Scheduling Order; Dkt. No. 25, Stipulated Order Extending Discovery.) Moreover, there is a substantial degree of factual overlap between the proposed counterclaims and the underlying litigation, due to the affirmative defenses that TCF raised in its Answer. (*See* Dkt. No. 10, Answer and Affirmative Defenses, at 18–20.) For these reasons, any prejudice to Schumann Tax and Zion is not sufficient to overcome the presumption

in favor of amendment. *Lawson v. Truck Drivers, Chauffeurs & Helpers, Loc. Union 100*, 698 F.2d 250, 256 (6th Cir. 1983) ("This Court . . . has freely allowed the amendment of pleadings in the absence of substantial prejudice to the opposing party.").

## CONCLUSION

For the foregoing reasons, TCF's proposed amendment plausibly alleges counterclaims for indemnification against Schumann Tax and Zion, and there is no substantial reason to deny TCF leave to amend. Accordingly, the Court should grant TCF's motion to amend its pleadings to add counterclaims for indemnification.

Dated: September 17, 2021

/s/*Katherine L. Pullen*
Andrea J. Bernard (P49209)
WARNER NORCROSS + JUDD LLP
150 Ottawa Ave. NW, Ste. 1500
Grand Rapids, Michigan 49503
(616) 752-2199
abernard@wnj.com
Jonathan Lauderbach (P51313)
715 E. Main Street, Suite 110
Midland, MI 48640-5382
989-698-3700
jlauderbach@wnj.com
Katherine L. Pullen (P74511)
2715 Woodward Ave., Ste. 300
Detroit, MI 48201
313-546-6000
kpullen@wnj.com

*Counsel for Defendant TCF National Bank*

21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby states and affirms that on the date set forth below, she caused the foregoing **Motion of TCF National Bank to Amend its Pleadings to Add Counterclaims**, along with the brief in support thereof, to be filed and served using the Court's CM/ECF system, which shall send notification of such filing to all attorneys of record.


Dated: September 17, 2021

/s/*Katherine L. Pullen*
WARNER NORCROSS + JUDD LLP
Katherine L. Pullen (P74511)
2715 Woodward Ave., Ste. 300
Detroit, MI 48201
313-546-6000
kpullen@wnj.com

*Counsel for Defendant TCF National Bank*