# EXHIBIT 2

Case 1:20-cv-12924-TLL-PTM ECF No. 26-3, PageID.377 Filed 09/17/21 Page 2 of 29

Authorized Integrators Network, LLC v. Wirepath Home..., Not Reported in...

2013 WL 3179505

2013 WL 3179505
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

AUTHORIZED INTEGRATORS
NETWORK, LLC, Plaintiff,

v.

WIREPATH HOME SYSTEMS,
LLC, d/b/a Snap AV, Defendant.

No. 13–10414.
|
June 20, 2013.

**Attorneys and Law Firms**

Thomas M. Schehr, Thomas H. Trapnell, Dykema Gossett PLLC, Detroit, MI, for Plaintiff.

Michael G. Brady, Yevgeniya M. Kogan, Warner Norcross & Judd, Southfield, MI, for Defendant.

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS COUNTS II AND IV**

ROBERT H. CLELAND, District Judge.

**\*1** Defendant Wirepath Home Systems, LLC, d/b/a Snap AV, ("Snap AV") ceased making commission payments to Plaintiff Authorized Integrators Network, LLC, ("AIN") pursuant to an agreement whereby AIN would non-exclusively promote Snap AV's consumer products to AIN's dealers in exchange for a commission on the sale thereof. AIN sued for breach of contract, contractual indemnification, and violation of the Michigan Sales Representative Commission Act, Michigan Compiled Laws § 600.2961. Snap AV moves to dismiss AIN's indemnification (Count II) and § 600.2961 (Count IV) claims under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the court will deny the motion as to Count II and grant the motion as to Count IV.

**I. BACKGROUND**

AIN maintains a nationwide network of consumer electronics dealers ("AIN Dealers"), and Snap AV is a consumer electronics manufacturer. On August 24, 2009, AIN and Snap AV executed an AIN Dealer Program Agreement (the "Agreement"). Pursuant to the Agreement, AIN agreed to non-exclusively promote Snap AV's products in exchange for a commission on all Snap AV products sold to AIN Dealers. (Dkt. # 23 at Pg ID 261–62 ¶¶ 2–3.) The Agreement did not require that AIN's promotional efforts result in a specific increase in Snap AV's sales revenue from year to year. (*See* Dkt. # 23 at Pg ID 261–265.) The Agreement's initial term was five years. (*Id.* at Pg ID 261 ¶ 1.) Either AIN or Snap AV could, if the other party failed to comply with its responsibilities under the Agreement, terminate the Agreement if the noncompliance continued after thirty days written notice. (*Id.* at Pg ID 263 ¶ 10.)

On November 20, 2012, approximately three years into the Agreement's initial term, Snap AV sent a letter notifying AIN that Snap AV believed AIN to be in breach of its obligations under the Agreement and demanding cure within thirty days. (Dkt. # 23 at Pg ID 270.) The letter expressed Snap AV's intent to terminate the Agreement if AIN did not cure within thirty days. (*Id.*) AIN responded, claiming that it had fulfilled its obligations under the Agreement and that any action on the part of Snap AV to terminate the Agreement would be a breach thereof. (Dkt. # 23 at Pg ID 273.) On December 19, 2012, thirty days after its initial notice of breach, Snap AV sent a second letter stating:

> [I]t is Snap AV's firm conviction that AIN has breached its duty under the Agreement to promote Snap AV's products and pricing programs.... Snap AV is no longer willing to continue with the Agreement under its current terms and arrangements. Accordingly, unless we are able to reach a prompt, effective resolution of this problem, Snap AV will have no choice but to terminate the Agreement.

(Dkt. # 23 at Pg ID 277.) AIN alleges that, following the letter, Snap AV failed to pay commission on the sale of Snap AV products to AIN Dealers for the months of December 2012, January 2013, and February 2013. AIN contends that its efforts to contact Snap AV about the commission payments were ignored.

**\*2** On February 1, 2013, AIN sued Snap AV alleging breach of contract, contractual indemnification, and violation of the Michigan Sales Representative Commission Act ("MSRCA"). Mich. Comp. Laws § 600.2961. Snap AV moves to dismiss AIN's indemnification (Count II) and MSRCA (Count IV) claims under Rule 12(b)(6).

## II. STANDARD

A complaint may be dismissed under Rule 12(b)(6) when the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A complaint "does not need detailed factual allegations," but "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Evans–Marshall v. Bd. of Educ.,* 428 F.3d 223, 228 (6th Cir.2005). In doing so, the court must "draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir.2007). Yet the court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby Cnty., Tenn.,* 220 F.3d 433, 466 (6th Cir.2000). A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual allegations. *Wright v. MetroHealth Med. Ctr.,* 58 F.3d 1130, 1138 (6th Cir.1995). "[T]he court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001).

## III. DISCUSSION

### A. Count II: Contractual Indemnification

Under Michigan law, "[a]n indemnity contract is to be construed in the same fashion as other contracts." *Zahn v. Kroger Co.,* 483 Mich. 34, 764 N.W.2d 207, 210–11 (Mich.2009). "All contracts, including indemnity contracts should be construed to ascertain and give effect to the intentions of the parties and should be interpreted to give reasonable meaning to all of its provisions." *Id.* AIN and Snap

AV contest the intent and meaning of the indemnification provision of the Agreement, which reads, in pertinent part:

> [Snap AV] shall indemnify, defend and hold [AIN] ... harmless from and against any loss, claim, suit, action, proceeding, liability, damage or expense (including reasonable attorneys fees and costs) which [AIN] may suffer, sustain or become subject to, as a result of (i) [Snap AV's] operation of its business, (ii) any alleged breach by [Snap AV] of any of its standard terms and conditions and (iii) arising out of claims, suits, actions or proceedings by customers based on failure of the Products by reason of design or manufacture.

**\*3** (Dkt. # 23–2 at Pg ID 263 ¶ 12.)

AIN argues that the Agreement's indemnification provision is not limited to thirdparty claims, but instead that the intent of the Agreement was to indemnify AIN for any loss, damage, or expense caused by Snap AV's "operation of its business." (Dkt. # 14 at Pg ID 76 ¶¶ 43–46.) Accordingly, AIN argues that Snap AV's alleged wrongful termination of the Agreement and failure to pay commissions are operations of Snap AV's business that caused AIN to sustain a loss, and such losses are covered by the plain language of the indemnification provision.

Snap AV contends that AIN's interpretation of the indemnification provision is unreasonable because the provision indemnifying AIN for losses arising out of Snap AV's "operation of its business" was not meant to be an unqualified grant of indemnity for any action on the part of Snap AV. Instead, Snap AV argues that references to Snap AV's products in the indemnification provision indicate that the provision was intended to apply only to claims, suits, or actions brought by third parties and arising out of the design or manufacture of Snap AV's products. (*See* Dkt. # 19 at Pg ID 175–76.)

Both AIN and Snap AV articulate plausible interpretations of the Agreement's indemnification provision. Under Michigan Law, "[a] contract is ambiguous if the language is susceptible to two or more reasonable interpretations." *City of Wyandotte v. Consol. Rail Corp.,* 262 F.3d 582, 585 (6th Cir.2011) (quoting *D' Avanzo v. Wise & Marsac, P.C.,* 223 Mich.App. 314, 565 N.W.2d 915, 918 (Mich.Ct.App.1997)). The ambiguity of the Agreement's indemnification provision requires the court to look to extrinsic factors to decide the meaning of the disputed phrase "operation of its business." *See Klapp v. United Ins. Grp. Agency, Inc.,* 468 Mich. 459, 663 N.W.2d 447, 469–70 (Mich.2003) (holding that relevant

Case 1:20-cv-12924-TLL-PTM ECF No. 26-3, PageID.379 Filed 09/17/21 Page 4 of 29

Authorized Integrators Network, LLC v. Wirepath Home..., Not Reported in...

2013 WL 3179505

extrinsic evidence may be considered when interpreting ambiguous language in a contract). AIN and Snap AV must develop the factual record so that the parties' intent in drafting the indemnification provision may be determined. *See Klapp*, 663 N.W.2d at 454 ("Where a written contract is ambiguous, a factual question is presented as to the meaning of its provisions, requiring a factual determination as to the intent of the parties in entering the contract." (citation omitted)). Thus, dismissing AIN's indemnification claim before discovery is inappropriate.

Snap AV argues that it is a longstanding principle of Michigan law that indemnification provisions are "not intended to be used as a sword or shield in disputes between the contracting parties with respect to the performance of the contract itself." *Miller–Davis CO. v. Ahrens Constr. Inc., 296 Mich.App. 56, 817 N.W.2d 609, 619 (Mich.Ct.App.2012)* (citing *Baker Contractor Inc. v. Chris Nelson & Son, Inc., 1 Mich.App. 450, 136 N.W.2d 771 (Mich.Ct.App.1965)*). However, this holding merely states that indemnification provisions do not generally cover contract disputes and discourages parties from using them as such if that was not the provision's intent. It does not prohibit parties from contracting for indemnification based on contract performance. In fact, Michigan law recognizes that parties can, through broad language, contract for indemnification liability beyond that arising from third-party claims if such intent can be ascertained. *See Sherman v. DeMaria Bldg. Co., Inc., 203 Mich.App. 593, 513 N.W.2d 187, 190 (Mich.Ct.App.1994)* (noting that indemnity contracts containing broad language may be construed to provide indemnification for the indemnitee's own negligence). Michigan law does not bar AIN's interpretation of the indemnification provision. Accordingly, the court will not dismiss AIN's claim for contractual indemnification.

## B. Count IV: Michigan Sales Representative Commission Act

**\*4** The MSRCA states:

> All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination. Commissions that become due after the termination date shall be paid within 45 days after the date on which the commission became due.

Mich. Comp. Laws § 600.2961(4). Snap AV argues that AIN's MSRCA claim should be dismissed because AIN failed to allege that the Agreement was terminated, and thus the statute has not been triggered. (Dkt. # 19 at Pg ID 171.) By its terms, the Agreement "may be terminated by either party if the other party fails to comply with any obligations or responsibilities hereunder and such failure continues for thirty (30) days after written notice." (Dkt. # 23 at Pg ID 263 ¶ 10.)

Snap AV argues that AIN failed to allege facts sufficient to support its claim that Snap AV terminated the Agreement. AIN contends that Snap AV's initial notice of breach followed by its second letter at the expiration of the thirty day cure period indicated that Snap AV intended to terminate the Agreement and that Snap AV's subsequent failure to pay commissions demonstrates that Snap AV acted on this intent. (Dkt. # 23 at Pg ID 244.) However, inferences regarding intent are not sufficient to terminate a contract. *See Wells v. 10–X Mfg. Co., 609 F.2d 248, 256 (6th Cir.1979)* (citing *Jack Mann Chevrolet Co. v. Assocs. Inv. Co., 125 F.2d 778, 784 (6th Cir.1942)*.

AIN alleges that, through its second letter, Snap AV wrongfully terminated the Agreement on December 19, 2012. (Dkt # 14 at Pg ID 74 ¶ 29.) Snap AV's December 19 letter stated, "Snap AV is no longer willing to continue with the Agreement under its current terms and arrangements. Accordingly, unless we are able to reach a prompt, effective resolution of this problem, Snap AV *will have no choice but to terminate the Agreement*." (Dkt. # 23 at Pg ID 277.) "[U]nder the law of Michigan a notice to rescind or terminate a contract must be clear and unambiguous, with the unquestionable purpose of insisting on rescission." *Wells*, F.2d 248 at 256. Here, the letter does not explicitly terminate the Agreement, but, by its plain language, explains that Snap AV will terminate if the problem is not resolved. Thus, the letter does not support AIN's contention that Snap AV terminated the Agreement on December 19, 2012.

Snap AV contends that, because it did not terminate the Agreement, AIN had the burden to terminate but failed to do so. AIN alleged that Snap AV materially breached the Agreement by failing to pay AIN commissions owed for December 2012, January 2013, and February 2013. (Dkt. # 14 at Pg ID 75 ¶ 39.) By the terms of the Agreement, this alleged breach first occurred on December 25, 2012. (Dkt. # 23 at Pg ID 267 ¶ 2.) "[W]here one party to a contract commits a material breach, the nonbreaching party is entitled to terminate the contract." *Convergent Grp. Corp. v.*

Case 1:20-cv-12924-TLL-PTM ECF No. 26-3, PageID.380 Filed 09/17/21 Page 5 of 29
Authorized Integrators Network, LLC v. Wirepath Home..., Not Reported in...
2013 WL 3179505

*Cnty. of Kent,* 266 F.Supp.2d 647, 657–58 (W.D.Mich.2003) (citing *Lynder v. S.S. Kresge Co.,* 329 Mich. 359, 45 N.W.2d 319, 325 (Mich.1951).* Snap AV's alleged material breach gave AIN the right to terminate the contract. Parties may "modify this rule by conditioning the right to terminate for a material breach upon notice and the opportunity to cure." *Id.* at 658, 45 N.W.2d 319 (citing *Lichnovsky v. Ziebart Int'l Corp.,* 414 Mich. 228, 324 N.W.2d 732, 737 (Mich.1982). The Agreement provided for such modification by allowing AIN or Snap AV to terminate after thirty days notice of the other party's failure to comply with "any obligations or responsibilities" of the Agreement. (Dkt. # 23 at Pg ID 263 ¶ 10.) Under the Agreement, AIN had the option to notify Snap AV that it was in breach, wait thirty days, and then, upon Snap AV's failure to cure, terminate the Agreement. AIN does not allege that it followed this procedure. Because the parties agreed to a specific procedure for terminating the Agreement, AIN cannot claim that the Agreement terminated automatically upon Snap AV's alleged breach.

**\*5** As AIN failed to allege that either it or Snap AV terminated the Agreement, the MSRCA has not been triggered. Therefore, Count IV will be dismissed.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendant's motion to dismiss [Dkt. # 19] is GRANTED IN PART AND DENIED IN PART. It is GRANTED with respect to Count IV, which is DISMISSED. It is DENIED with respect to Count II.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 3179505

---

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:20-cv-12924-TLL-PTM ECF No. 26-3, PageID.381 Filed 09/17/21 Page 6 of 29
Employers Ins. Co. of Wausau v. Duro-Last Roofing, Inc., Not Reported in F.Supp.2d...
2011 WL 5039799

2011 WL 5039799
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Northern Division.

EMPLOYERS INSURANCE
COMPANY OF WAUSAU, Plaintiff,
v.
DURO–LAST ROOFING, INC. and
Oscoda Plastics, Inc., Defendants.

No. 11–10206–BC.
|
Oct. 24, 2011.

*OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND GRANTING
DEFENDANTS' MOTION FOR LEAVE TO FILE
AMENDED ANSWER AND COUNTER–COMPLAINT*

THOMAS L. LUDINGTON, District Judge.

**\*1** Defendants Duro–Last Roofing, Inc. and Oscoda Plastics, Inc. manufactured a commercial flooring product, "Protect–All®," installed in 157 Cracker Barrel restaurants around the country in the 1990s and early 2000s. Plaintiff Employers Insurance Company of Wausau issued Defendants five general commercial liability insurance policies which provided insurance from August 1, 1999 to July 1, 2003.[1] *See* Compl. Exs. A–E, ECF No. 1–2–1–5; Pl.'s Mot. Summ. J. Ex. A ¶ 4, ECF No. 29–2; Defs.' Opp'n Summ. J. *passim,* ECF No. 33.

In June 2007, Cracker Barrel sued Defendants in North Carolina state court, alleging defects in the design, manufacture, and installation of the flooring. Defendants provided Plaintiff notice of the Cracker Barrel litigation. Plaintiff agreed to participate in the litigation and provide a defense, but under a full reservation of rights.

On January 18, 2011, Plaintiff filed suit in this Court under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that its policies did not cover liabilities arising from the North Carolina case. The policies provide in pertinent part:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies....

> b. This insurance applies to "bodily injury" and "property damage" only if ... [t]he "bodily injury" or "property damage" occurs during the policy period ....

Compl. Exs. A at 7, B at 15, C at 14, D at 16, E at 14, *quoted in* Pl.'s Mot. Summ. J. 5. "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting use of that property. All such loss of use shall be deemed to occur at the time of physical injury." Compl. Exs. A at 36, B at 32–33, C at 31–32, D at 36, E at 34. The "policy period" ran from August 1, 1999 to July 1, 2003. *See* Compl. Exs. A–E; Pl.'s Mot. Summ. J. Ex. A ¶ 4; Defs.' Opp'n Summ. J. *passim.*

In March 2011, Defendants moved to dismiss this case, arguing that allowing it to proceed would be an abuse of discretion, as many of the same factual issues are already before the North Carolina court. ECF No. 14. The Court denied the motion, agreeing with Plaintiff that the extent to which Defendants are entitled to insurance coverage for the underlying Cracker Barrel litigation depends on the language of the policies, not the facts of the underlying North Carolina case, and the Court need not wait for that case to be resolved before considering the coverage issues. ECF No. 32. Defendants then filed an unopposed third-party complaint to join two other insurers who also provided Defendants coverage, Third–Party Defendants Zurich American Insurance Co. and National Union Fire Insurance Co. of Pittsburg. ECF No. 40.

The North Carolina case is scheduled to go to trial in September 2011. Fifty-four witnesses, including eight experts, have been deposed. The parties have also produced about one hundred forty-five thousand pages of documents. In the case before this Court, discovery has not yet commenced.[2]

**\*2** Now before the Court are two motions, Plaintiff's motion for partial summary judgment (ECF No. 29) and Defendants' motion for leave to file an amended answer and counterclaim (ECF No. 39). Plaintiff's motion, filed in May 2011, seeks summary judgment on two issues. First, Plaintiff asks the Court to declare "[w]hether there is coverage under [Plaintiff's] Polices for 'property damage' that occurred after the final ... policy period expired?" Pl.'s Mot. Summ. J. iii. Second, Plaintiff seeks a declaration that the policies

Employers Ins. Co. of Wausau v. Duro-Last Roofing, Inc., Not Reported in F.Supp.2d...

2011 WL 5039799

do not provide coverage for property damage at sixty-three specific Cracker Barrel stores which Plaintiff contends received no flooring until after the policies expired on July 1, 2003. Defendants filed their opposition in June 2011, arguing the motion should be denied because discovery has not been taken in this action and Plaintiff did not seek concurrence from Defendants before filing the motion. On August 29, 2011, the parties filed a stipulation agreeing that the flooring was first shipped to sixty-one specific Cracker Barrel stores after July 1, 2003, according to Defendants' business records. Stipulation Regarding Dates ¶¶ 1–61, ECF No. 48.

For the reasons discussed below, Plaintiff's motion for summary judgment will be granted in part and denied in part. Based on the plain language of the policies, they do not cover property damage that occurred after the final policy period expired, and thus they do not provide coverage for the sixty-one stores which the parties have stipulated did not receive any flooring until after July 1, 2003. As no discovery has yet been taken in this case, however, the remainder of the motion shall be held in abeyance pending discovery.

Also before the Court is Defendants' motion for leave to file an amended answer and counter-complaint in which Defendants seek leave to assert three counterclaims against Plaintiff: (1) declaratory judgment that Plaintiff is obligated to provide coverage in the underlying North Carolina action; (2) breach of contract for failure to provide this coverage; and (3) penalty interest. Plaintiff opposes the motion, contending that Defendants' "counterclaim is compulsory and, as such, Fed.R.Civ.P. 13(a) required it to be filed at the time of [Defendants'] Answer in March." Pl.'s Opp'n Mot. Am. 2, ECF No. 44. As Plaintiff alleges undue delay, but does not allege any prejudice, Defendants' motion will be granted.

**I.**

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party who must "set out specific facts showing a genuine issue for trial." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted). The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir.1989). In viewing the evidence, the Court must draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52.

**\*3** In this case, the parties do not dispute that the policies do not cover flooring that was installed after the final policy period expired. Compare Pl.'s Mot. Summ. J. (noting that Defendants do not "even address [Plaintiff's] trigger of coverage argument"), with Defs.' Opp'n Summ. J. ("The legal issue raised, as to whether [Plaintiff] is liable for the floors that were installed after its policy expired, is completely different than the factual basis as to when the floors were installed in the Cracker Barrel stores in relationship to the expiration of [Plaintiff's] policies.").

Moreover, an independent review of the policies confirms that under their plain language, no coverage exists under the policies for flooring installed after the final policy period expired on July 1, 2003. See generally Comerica Inc. v. Zurich Am. Ins. Co., 498 F.Supp.2d 1019, 1027 (E.D.Mich.2007) ("Under Michigan law, an insurance policy is to be enforced according to its plain language.").[3] The policies define "property damage" as "[p]hysical injury to tangible property. All such loss of use shall be deemed to occur at the time of physical injury." Compl. Exs. A at 36, B at 32–33, C at 31–32, D at 36, E at 34. The Cracker Barrel stores are alleged to have suffered "physical injury" when the defective flooring product was installed. Crucially, the policies only cover property damage which "occurs during the policy period." Compl. Exs. A at 7, B at 15, C at 14, D at 16, E at 14. And it is undisputed that the final "policy period" terminated on July 1, 2003.[4] Pl.'s Mot. Summ. J. Ex. A ¶ 4; see Defs.' Opp'n Summ. J. passim. Thus, as a matter of law, any flooring product installed after July 1, 2003, is excluded from coverage.

The parties have stipulated that Defendants did not ship flooring to sixty-one specific Cracker Barrel stores before July 1, 2003. Stipulation Regarding Dates ¶¶ 1–61. It is self-evident, of course, that the flooring could not be installed

Case 1:20-cv-12924-TLL-PTM ECF No. 26-3, PageID.383 Filed 09/17/21 Page 8 of 29

Employers Ins. Co. of Wausau v. Duro-Last Roofing, Inc., Not Reported in F.Supp.2d...

2011 WL 5039799

in the Cracker Barrel stores before Defendants shipped the flooring to the stores. Based on the undisputed facts, the policies do not provide coverage for the sixty-one specific Cracker Barrel stores which the parties have stipulated that Defendants did not ship flooring to until after the final policy period expired on July 1, 2003.

Plaintiff's motion for summary judgment, however, has identified sixty-three Cracker Barrel stores. The stipulation excludes two stores: (1) store number 131, in Cincinnati, Ohio; and (2) store number 579, in Piedmont, South Carolina. *Compare id., with* Pl.'s Mot. Summ. J. Ex. B. The parties have not reached consensus on when the flooring was first shipped to these two stores. *See* Stipulation Regarding Dates ¶¶ 62– 63. In contrast, the parties do agree that "Defendants have had no opportunity to conduct discovery." *Compare* Defs.' Opp'n Summ. J. 6, *with* Pl.'s Reply Br. 3, ECF No. 36.

**\*4** "Before ruling on summary judgment motions," the Sixth Circuit has instructed, "a district judge must afford the parties adequate time for discovery, in light of the circumstances of the case." *Plott v. General Motors Corp.,* 71 F.3d 1190, 1195 (6th Cir.1995), *quoted in* Defs.' Opp'n Summ. J. 5. *Accord White's Landing Fisheries, Inc. v. Buchholzer,* 29 F.3d 229, 231, 232 (6th Cir.1994) (reversing district court because the "grant of summary judgment to the defendants was ... issued without *any* discovery taking place" (emphasis in original)). This general rule is subject to two significant limitations. First, "Where the party opposing the summary judgment motion has been dilatory in securing the necessary discovery, it cannot be argued that judgment has been entered without the opportunity to establish a genuine issue of fact ." *Turner v. General Motors Corp.,* 23 Fed. App'x 415 (6th Cir.2001) (citing *Plott,* 71 F.3d at 1196–97). Second, the party opposing the summary judgment motion waives the right to "adequate time for discovery" unless "the non-movant submits affidavits stating that 'the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition.' " *Plott,* 71 F.3d at 1196 (quoting Fed.R.Civ.P. 56(f) (amended in 2010)).[5]

Plaintiff does not argue that Defendants have been dilatory in discovery—indeed, Plaintiff does not dispute that Defendants have not had the opportunity to conduct discovery. *See* Pl.'s Reply Br. 3. Rather, Plaintiff asserts, discovery is unnecessary because Defendants have "access to and control of all necessary information relevant to the trigger of coverage issue raised in this motion, because [Defendants are] the manufacturer and seller of the Protect–All flooring." *Id.* In

support of its argument, Plaintiff notes that "60 of the 231 documents (25%), representing nearly all of the relevant shipping documents relied upon by [Plaintiff] to generate the [list of sixty-three stores attached as Exhibit B to Plaintiff's motion] were actually produced by [Defendants] in the underlying action." *Id.*

Plaintiff's argument proves too much. That is, prior to Plaintiff's argument, one might have assumed that Defendants had equal—if not better—knowledge than Plaintiff about where and when the flooring was shipped. It was Defendants, after all, who manufactured and shipped the flooring, not Plaintiff. Yet by Plaintiff's own admission, 75 percent of the documents it relies on in compiling its list of stores came from sources other than Defendants. Of course, Defendants undoubtedly also have access to information showing where and when the flooring was sent. Indeed, Defendants may yet have superior knowledge than Plaintiff on this issue. Defendants are entitled, however, to adequate time for discovery regarding the basis of Plaintiff's assertions, such as the 171 documents which came from a source other than Defendants, in order to contest Plaintiff's specific factual allegations regarding the two disputed stores.

**\*5** Reinforcing this conclusion, Defendants' counsel has submitted an affidavit stating "Defendants need discovery —and additional time—to ascertain whether there are any other documents that provide additional details relating to the delivery of product." Defs.' Opp'n Summ. J. Ex. A ¶ 5. Defendants' brief elaborates that "without discovery and an opportunity to conduct depositions, Defendants cannot determine whether the documents Plaintiff relies upon are accurate ...." Defs.' Opp'n Summ. J. 6. Holding the motion abeyance pending additional discovery regarding the two disputed stores carries no risk of prejudicing Plaintiff's ability to assert its rights under the policies. But ruling on the merits of the motion now, before any opportunity for discovery, may prejudice Defendants' ability to defend their rights under the same policies. Thus, the motion will be denied without prejudice as to these two stores.

Defendants' additional argument, that the motion should be denied in its entirety because Plaintiff violated Local Rule 7.1 of the Eastern District of Michigan Local Rules, is unpersuasive. "Pursuant to E.D. Mich. LR 7.1(a), a party must seek concurrence in all motions." *Cadlerock Joint Venture II LP v. Fielder,* No. 06–15445–BC, 2010 WL 148826, at *1 (E.D.Mich. Jan.14, 2010); *see also* E.D. Mich. L.R. 7.1(a) (1) (requiring that "[t]he movant must ascertain whether the

Case 1:20-cv-12924-TLL-PTM ECF No. 26-3, PageID.384 Filed 09/17/21 Page 9 of 29

Employers Ins. Co. of Wausau v. Duro-Last Roofing, Inc., Not Reported in F.Supp.2d...

2011 WL 5039799

contemplated motion ... will be opposed"). Violating this Rule may result in the motion being denied as a sanction. *See, e.g., U.S. v. Ramesh,* No. 02–80756, 2009 WL 817549, at *6 (E.D.Mich. March 26, 2009).

In this case, the parties dispute whether concurrence was sought. Defendants argue that "Plaintiff made no effort to ascertain whether its [m]otion would be opposed." Defs.' Opp'n Summ. J. 7. Plaintiff disputes this, attaching several emails it contends "properly documented its attempts to seek concurrence." Pl.'s Reply Br. 3. *See also id.* Exs. B, C, D. These emails do document an attempt to resolve this dispute prior to filing. On June 27, 2010, for example, Plaintiff's counsel wrote to Defendants' counsel: "please advise as to [Defendants'] position with regard to the flooring systems installed after [Defendants'] went off the risk. [Defendants'] cooperation with regard to these issues is appreciated." *Id.* Ex. C. More than ten months passed. On May 12, 2011, Plaintiff's counsel wrote again:

> Please be advised that today I plan to file a Motion for Partial Summary Judgment in the above matter on the trigger issue.... Based upon the previous correspondence ... I presume you do not concur in the relief sought in this motion. If this is assumption is incorrect, please let me know.

*Id.* Ex. B. Plaintiff also requested consent to the filing of a motion to file documents under seal. Defendants' counsel responded: "I do not believe this is a good faith effort to secure concurrence." Defs.' Opp'n Summ. J. Ex. E. Defendants' counsel followed up the following morning: "As to the Motion to File Under Seal, I did not receive the Proposed Order referenced in the Motion. I concur in the Motion, except for the part dealing with the filing of a Motion for Partial Summary Judgment." *Id.* Ex. D. That day, Plaintiff filed its motion for partial summary judgment. The course of conduct from June 2010 to May 2011 demonstrates that Plaintiff did try, however tepidly, to resolve the issue prior to filing its motion for summary judgment. Thus, although Plaintiff certainly could have done more to obtain concurrence before filing its motion, imposing a Rule 7.1 sanction is inappropriate in this case.

## II.

 *6 Rule 13(a) of the Federal Rules of Civil Procedure states that a compulsory counterclaim—one which "arises out of the transaction or occurrence that is the subject matter of

the opposing party's claim"—"must" be pled at the time an answer is served. Fed.R.Civ.P. 13(a). In this case, the parties do not dispute that the proffered counterclaim is compulsory. *Compare* Pl.'s Opp'n Mot. Am. 2, *with* Defs.' Mot. Am. 3. Indeed, it is the mirror image of Plaintiff's complaint: Plaintiff's complaint seeks a declaration that it has no insurance coverage obligation for the North Carolina litigation, while Defendants' proffered counterclaim seeks a declaration that Plaintiff has such an obligation.

Rather, the only issue in dispute is the "must" in Rule 13(a). *See* Fed.R.Civ.P. 13(a) ("A pleading *must* state as a counterclaim any claim that—at the time of its service— the pleader has against an opposing party ...." (emphasis added)). On its face, "must" appears to admit no exception—a counterclaim "must" be pled at the time the answer is served. Such, however, is not the rule. Until 2009, subdivision (f) of Rule 13 modified the "must" of subdivision (a), providing that when a party fails to include a counterclaim in a pleading by "oversight, inadvertence, or excusable neglect" or "when justice requires," that party may "by leave of court set up the counterclaim by amendment." Fed.R.Civ.P. 13(f) (abrogated in 2009). *See generally Budd Co. v. Travelers Indem. Co.,* 820 F.2d 787, 791–92 (6th Cir.1987) (quoting 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1430, at 155 (1971) ("The clause in Rule 13(f) permitting amendments 'when justice requires' is especially flexible and enables the court to exercise its discretion and permit amendment whenever it seems desirable to do so."). Subdivision (f) was removed in 2009, the Advisory Committee's Notes explain, "as largely redundant and potentially misleading." Fed.R.Civ.P. 13 advisory committee's notes (2009). Instead, the Notes instruct, "[a]n amendment to add a counterclaim will be governed by Rule 15." *Id.*

Rule 15, in turn, provides in pertinent part: "The court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2) (2010). Although generally freely given, justice does not require leave be given when the nonmoving party shows: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the [nonmoving] party by virtue of allowance of the amendment, [or] futility of amendment." *Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Supreme Court has cautioned, however, that although "the grant or denial of an opportunity to amend is within the discretion of the District Court ... outright refusal to grant the leave without any justifying reason appearing for the denial

Employers Ins. Co. of Wausau v. Duro-Last Roofing, Inc., Not Reported in F.Supp.2d...

2011 WL 5039799

is not an exercise of discretion; it is merely abuse of that discretion." *Id.*

**\*7** In this case, Plaintiff does not argue the Court should deny leave to amend because of undue prejudice, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments, or futility of amendment—and it is not the role of the Court to invent such arguments for Plaintiff. *See Guarino v. Brookfield Twp. Trs.,* 980 F.2d 399, 406 (6th Cir.1992) (noting that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion."). Plaintiff does, perhaps, argue that there has been undue delay, writing that it "cannot affirmatively consent to a counterclaim against it particularly in light of [Defendants'] failure to timely assert it under Fed.R.Civ.P. 13(a)." Pl.'s Opp'n Mot. Am. 4. Yet under Sixth Circuit precedent, "it is well-settled that delay alone is not a sufficient reason for denying leave. The delay must have resulted in prejudice to the party opposing the motion." *Moore v. City of Paducah,* 790 F.2d 557, 562 (6th Cir.1986) (per curiam) (citation omitted) (citing *Mercantile Trust Co. Nat'l Ass'n v. Inland Marine Products Corp.,* 542 F.2d 1010, 1012 (8th Cir.1976)); *see, e.g., Prater v. Ohio Educ. Ass'n,* 505 F.3d 437, 445 (6th Cir.2007) ("[O]ur court ... has required 'at least some significant showing of prejudice' to deny a motion to amend based solely upon delay." (quoting *Moore,* 790 F.2d at 557)). In this case, Plaintiff has not alleged any prejudice. Thus, the Court must give Defendants leave to amend their answer to add a counterclaim.

### III.

Accordingly, it is **ORDERED** that Plaintiff's motion for partial summary judgment (ECF No. 29) is **GRANTED IN PART AND DENIED IN PART.**

It is further **DECLARED** that Plaintiff has no insurance coverage obligation for property damage that occurred after the final policy period expired on July 1, 2003.

It is further **DECLARED** that Plaintiff has no insurance coverage obligation for the sixty-one stores which the parties have stipulated did not receive any flooring until after July 1, 2003.

It is further **ORDERED** that Plaintiff's motion for summary judgment that Plaintiff has no insurance coverage obligation for store no. 131, in Cincinnati, Ohio, and store no. 579, in Piedmont, South Carolina, is **DENIED WITHOUT PREJUDICE.** Plaintiff may renew its motion at the close of discovery, if necessary.

It is further **ORDERED** that Defendants' motion for leave to file an amended answer and counter-complaint (ECF No. 39) is **GRANTED.**

### All Citations

Not Reported in F.Supp.2d, 2011 WL 5039799

### Footnotes

1     Although the fifth and final policy was intended to run through December 31, 2003, the policy "was terminated early, on July 1, 2003, at the request of [Defendants]." Pl.'s Mot. Summ. J. Ex. A ¶ 4. Defendants do not dispute this. *See* Defs.' Opp'n Summ. J. *passim.*

2     Discovery does not close in this case until April 30, 2012. *See* ECF No. 26.

3     Plaintiff assumes that Michigan substantive law applies to this contract. Defendants do not contest this assumption.

4     As noted above, although the fifth and final policy was intended to run through December 31, 2003, the policy "was terminated early, on July 1, 2003, at the request of [Defendants]." Pl.'s Mot. Summ. J. Ex. A ¶ 4. Defendants do not dispute this. *See* Defs.' Opp'n Summ. J. *passim.*

5     As a part of the 2010 amendments, Rule 56(f), quoted in *Plott,* was restyled and relocated to subdivision (d) of Rule 56. *See* Fed.R.Civ.P. 56 advisory committee's notes (2010). "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)." *Id.* Rule 56(d) now states:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

2011 WL 5039799

Fed.R.Civ.P. 56(d) (2010). Thus, under the current Rule, if a party opposing summary judgment demonstrates that it lacks facts necessary to justify its opposition because of lack of opportunity for discovery, the court should defer or deny the motion or "issue any other appropriate order." *Id.*

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:20-cv-12924-TLL-PTM   ECF No. 26-3, PageID.387   Filed 09/17/21   Page 12 of 29
Hurvenich v. ArvinMeritor, Inc., Not Reported in F.Supp.2d (2011)

2011 WL 3359653

2011 WL 3359653
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Dina HURVENICH, Plaintiff,

v.

ARVINMERITOR, INC., a
foreign corporation, Defendant.

No. 10–10278.
|
Aug. 4, 2011.

**Attorneys and Law Firms**

Deborah L. Gordon, Deborah L. Gordon Assoc., Bloomfield Hills, MI, for Plaintiff.

Harold D. Pope, III, Nicole R. Foley, Jaffe, Raitt, Southfield, MI, for Defendant.

*ORDER GRANTING PLAINTIFF'S CORRECTED MOTION FOR ORDER GRANTING LEAVE TO FILE FIRST AMENDED COMPLAINT AND DENYING DEFENDANT'S MOTION FOR RECONSIDERATION*

DENISE PAGE HOOD, District Judge.

**I. INTRODUCTION**

**\*1** This matter is before the Court on Plaintiff Dina Hurnevich's Corrected Motion for an Order Granting Leave to File First Amended Complaint **[Docket No. 29, filed on June 23, 2011].** Defendant filed a response on July 7, 2011 **[Docket No. 30],** to which Plaintiff replied **[Docket No. 32, filed on July 18, 2011].**

This matter is also before the Court on Defendant's Motion for Reconsideration of the Court's December 22, 2010 Order **[Docket No. 15, filed on January].**

**II. STATEMENT OF FACTS**

Plaintiff Dina Hurnevich was hired by Defendant ArvinMeritor on October 30, 2006, as Manager of Finance Process Improvement. She was employed by Defendant in various capacities until her termination on March 17, 2009. Plaintiff alleges that she was subjected to gender discrimination with respect to her compensation, and was terminated at the end of an FMLA/pregnancy leave.

Plaintiff contends that, in October 2009, Plaintiff applied for a Director of Treasury position—the job she held prior to her leave—but was passed over in favor of a substantially less qualified male who applied from outside of the company. On December 22, 2011, this Court issued an Order Denying Defendant's Motion to Dismiss Plaintiff's Complaint, or Alternatively, Motion to Stay and Compel Arbitration and to Dismiss Claim Under Pregnancy Discrimination Act and Granting Plaintiff's Motion for an Order to Proceed with Discovery **[Docket No. 13].** After additional discovery revealed information Plaintiff believes to substantiate a further claim of discrimination and retaliatory failure to hair claim, Plaintiff brought this motion.

**III. ANALYSIS**

**A. Plaintiff's Motion to Amend Complaint**

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course prior to service of a responsive pleading or within 21 days of serving its pleading if no responsive pleading is required. "Otherwise a party may amend the party's pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The decision whether to permit amendment is committed to the discretion of the trial court. *See General Electric Co. v. Sargent & Lundy,* 916 F.2d 1119, 1130 (6th Cir.1990). "In evaluating the interests of justice, courts consider several factors, including undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Coe v. Bell,* 161 F.3d 320, 341 (6th Cir.1988). Where an amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier. *Wade v. Knoxville Utils. Bd.,* 259 F.3d 452, 459 (6th Cir.2001).

In this case, Plaintiff filed her Complaint on January 20, 2010. Plaintiff did not move to amend her Complaint until June 23, 2011. Defendant argues that this is "undue delay;" pursuant to which Plaintiff's motion should be denied. The Court notes, however, the break in discovery, which spanned over most of 2010. In the absence of discovery, Plaintiff could

Hurvenich v. ArvinMeritor, Inc., Not Reported in F.Supp.2d (2011)

2011 WL 3359653

not reasonably become aware of additional information that would necessitate an amendment to her Complaint. Although Plaintiff stated that it was her "opinion" that Mr. Todd Chirillo was not qualified for the position for which he was hired, it was not until the end of May 2011 that credible information allegedly substantiating what was previously only an opinion was produced to Plaintiff. The time that elapsed in between when Plaintiff discovered this evidence and filed the instant motion does not constitute undue delay.

**\*2** Defendant is not prejudiced by an amendment to Plaintiff's Complaint. The additional discovery required will be limited, and some of this information, such as Mr. Chirillo's personnel file, has already been produced. The parties previously agreed to extend discovery through much of July.

Given that Plaintiff could not reasonably have been expected to, in good faith, bring the additional claims before the Court before the time she did, and that Defendant faces no substantial prejudice, the Court finds that justice requires that Plaintiff's motion be granted.

### B. Defendant's Motion for Reconsideration

The Local Rules of the Eastern District of Michigan provide that any motion for reconsideration shall be served not later than fourteen days after entry of such order. E.D. Mich. LR 7.1(g)(1). No response to the motion and no oral argument thereon shall be allowed unless the Court, after filing of the motion, otherwise directs. E.D. Mich. LR 7.1(g)(2). The Local Rule further states:

(3) **Grounds.** Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted. The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

E.D. Mich. LR 7.1(g)(3).

The Court finds that Defendant's Motion to Reconsider presents the same issues already ruled upon, either expressly or by reasonable implication, by the Court, and addressed in the Court's December 22, 2010 Order. The Court further finds that the movant has not demonstrated a palpable defect by which the Court and the parties have been misled, nor has Defendant shown that a different disposition of the case would result from a correction of any error.

### IV. CONCLUSION

**IT IS ORDERED** that Plaintiff Dina Hurnevich's Corrected Motion for an Order Granting Leave to File First Amended Complaint **[Docket No. 29, filed on June 23, 2011]** is GRANTED.

**IT IS FURTHER ORDERED** that Defendant's Motion for Reconsideration of the Court's December 22, 2010 Order **[Docket No. 15, filed on January]** is **DENIED.**

**IT IS FURTHER ORDERED** that the Scheduling Order is **AMENDED.** The deadline for completion of fact discovery is September 23, 2011. Any dispositive motions must be filed by October 7, 2011. The Joint Final Pre–Trial Order is due December 12, 2011. The Final Pre–Trial Conference is scheduled for December 15, 2011 at 3:30 p.m.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 3359653

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 2548906

2021 WL 2548906
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Aliah LARRY, individually and on behalf
of all others similarly situated, Plaintiff,

v.

KELLY SERVICES, INC., Defendant.

Civil Action No. 20-CV-11481
|
Signed 06/22/2021

**Attorneys and Law Firms**

Andrew W. Dunlap, Michael A. Josephson, Carl A. Fitz, Josephson Dunlap LLP, Houston, TX, for Plaintiff.

Andrew D. Welker, Fisher & Phillips, Gerald L. Maatman, Jr., James L. Curtis, Jennifer A. Riley, Seyfarth Shaw LLP, Chicago, IL, for Defendant.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

BERNARD A. FRIEDMAN, SENIOR UNITED STATES DISTRICT JUDGE

 **\*1** This matter is presently before the Court on plaintiff's motion for leave to file a first amended complaint [docket entry 50]. Defendant has responded and plaintiff has replied. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

This is a Fair Labor Standards Act ("FLSA") collective action brought by a former employee of defendant Kelly Services, Inc. ("KSI"). Plaintiff alleges that she and other similarly situated employees were misclassified as exempt from overtime compensation in violation of the FLSA. On March 1, 2021, the Court granted plaintiff's motion for conditional certification of the proposed collective action and ordered that potential (or "opt-in") plaintiffs must file a notice of consent to join the litigation on or before May 31, 2021. *See* docket entry 37 at 7.

In the instant motion, plaintiff requests leave to file a first amended complaint so as to include alleged "violations of California, Kentucky, and Pennsylvania state wage and hour laws pursuant to Fed. R. Civ. P. 23." Pl.'s Br. at 1. Plaintiff states that opt-in plaintiffs Shirley West, Darby Johnson, and Shahd Majeed would act as class representatives for these claims, respectively. *See id.* All three proposed representative plaintiffs filed their notices of consent to opt into the collective action on April 9, 2021, or April 16, 2021. *See id.* at 2. Plaintiff contends that

> Kelly Services would not be prejudiced, as the fact discovery deadline is currently December 10, 2021. Kelly Services has ample time to investigate these allegations. Larry's proposed First Amended Complaint alleges Kelly Services misclassified its Recruiters as exempt from overtime pay under California, Kentucky, and Pennsylvania state law. Because the proposed claims concern allegations of exemption misclassification, they relate back to Larry's original complaint. Judicial economy favors bringing these claims in a single Federal Court proceeding, rather than separate state courts across the country.

*Id.* at 2 (citation omitted).

In response, defendant argues that "Plaintiff's proposed amendment would cause substantial prejudice as Plaintiff seeks to expand the size of this action both in terms of the substantive theories at issue and in terms of the persons on whose behalf she seeks to assert such claims." Def.'s Resp. Br. at 7. Defendant states that plaintiff's proposed state law claims allege that defendant did not provide food or rest breaks or proper compensation for such denial, facts that plaintiff did not allege in her original complaint. *See id.* Defendant adds that the FLSA and the various state laws "require different facts, different proof, and different findings." *Id.* at 8. Further, defendant contends that combining the proposed class claims with plaintiff's collective action will cause confusion by requiring "another round of notices to individuals who already declined to opt-in to this action." *Id.* at 9. Defendant next argues that plaintiff knew that defendant "operated nationwide and should have known that she should assert Kentucky, California, and Pennsylvania claims prior to the opt-in period" and, therefore, unreasonably delayed moving to amend her complaint. *Id.* at 11. Finally, defendant asserts that the Court should decline to exercise supplemental jurisdiction over the proposed state claims because of "manageability problems," *id.* at 13, and that plaintiff's proposed amendment is futile. *See id.* at 16-17.

Case 1:20-cv-12924-TLL-PTM ECF No. 26-3, PageID.390 Filed 09/17/21 Page 15 of 29
*Larry v. Kelly Services, Inc.*, Slip Copy (2021)

2021 WL 2548906

**\*2** Federal Rule of Civil Procedure 15(a)(2) states that after a responsive pleading is filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." "Rule 15 reinforce[s] the principle that cases should be tried on their merits rather than the technicalities of pleadings, and therefore assumes a liberal policy of permitting amendments." *Langley v. Credit Suisse First Boston Corp.*, 89 F. App'x 938, 943 (6th Cir. 2004) (internal quotation marks omitted). Likewise, the Supreme Court has stated that

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test [her] claim on the merits. In the absence of any apparent or declared reason —such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Finally, the Sixth Circuit has clarified that

> [t]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice. In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.

*Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994) (internal quotation marks and citations omitted).

Plaintiff filed the instant motion on May 28, 2021, six to seven weeks after proposed representative plaintiffs had filed their notices of consent to opt into the collective action, three days before the close of the opt-in period, and before defendant had served discovery on any opt-in plaintiff. *See* Pl.'s Br. at 3. Plaintiff indicates that during the six to seven week period

between the filing of proposed representative plaintiffs' opt-in notices and the filing of the instant motion plaintiff investigated the state law allegations, including "the claims of subsequent opt-in Plaintiffs, who have filed notices of consent as recently as today" (May 28, 2021). *Id.* With the discovery deadline in this case currently set for December 10, 2021, defendant has just under six months to conduct discovery on plaintiff's three proposed state law claims, as well as the claims outlined in plaintiff's initial complaint. Under these circumstances, the proposed amended complaint was not unduly delayed nor does it unduly prejudice defendant.

The Court also concludes that its supplemental jurisdiction extends over the proposed state law claims. The Sixth Circuit has stated that in order for a federal court to exercise supplemental jurisdiction over a state law claim,

> [t]he state and federal claims must derive from a common nucleus of operative fact. But, if considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

**\*3** *Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). The Sixth Circuit has also stated that supplemental jurisdiction "is a doctrine of discretion whose justification lies in considerations of judicial economy, convenience and fairness to litigants." *Transcon. Leasing, Inc. v. Mich. Nat. Bank of Detroit*, 738 F.2d 163, 166 (6th Cir. 1984) (internal quotation marks omitted) (quoting *Gibbs*, 383 U.S. at 726). The state law claims raised in plaintiff's proposed amended complaint share a common nucleus of operative fact with, and/or would ordinarily be tried in the same judicial proceeding as, the FLSA claim. Moreover, the Court believes that the principles of judicial economy, convenience, and fairness to litigants weigh in favor of granting the instant motion. Accordingly,

IT IS ORDERED that plaintiff's motion for leave to file a first amended complaint is granted. Plaintiff may file her proposed amended complaint within five days of the date of this order.

### All Citations

Slip Copy, 2021 WL 2548906

**Larry v. Kelly Services, Inc., Slip Copy (2021)**

2021 WL 2548906

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:20-cv-12924-TLL-PTM ECF No. 26-3, PageID.392 Filed 09/17/21 Page 17 of 29

Markley v. Honda of America Mfg., Inc., Not Reported in Fed. Supp. (2005)

2005 WL 8161978

2005 WL 8161978
Only the Westlaw citation is currently available.
United States District Court,
S.D. Ohio, Eastern Division.

Lowell D. MARKLEY, Plaintiff,

v.

HONDA OF AMERICA
MFG, INC., et al., Defendant.

Case No. 2:04-cv-826
|
Filed 06/29/2005

**Attorneys and Law Firms**

Deborah Jean Adler, Casper & Casper, Matthew D. Stokely, Altick & Corwin, Dayton, OH, for Plaintiff.

Craig G. Penrose, Tressler Soderstrom Maloney & Priess, Chicago, IL, David A. Campbell, III, Vorys Sater Seymour & Pease LLP, Cleveland, OH, for Defendant.

## **ORDER**

Mark R. Abel, United States Magistrate Judge

\*1 This matter is before the Court on Defendant Braodspire's May 16, 2005 unopposed motion for leave to file counterclaim instanter (doc. 16). This action was filed by Plaintiff Lowell D. Markley pursuant to the Employee Retirement Social Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., to recover disability benefits from the Honda Long-Term Disability Plan.

On February 24, 2005, the Magistrate Judge held a preliminary pretrial conference. At the conference, Defendant Broadspire stated that it would be filing a counterclaim. The preliminary pretrial order states in the section entitled "Amendment to pleadings" that the "Plan will file a counterclaim alleging set-off." (Doc. 14). On March 18, 2005, at the suggestion of the Magistrate Judge and in an effort to stipulate to the addition of the counterclaim, Defendant Broadspire sent a copy of the draft of the proposed counterclaim to Plaintiff's counsel. (Def's Exh. C). Since Plaintiff did not respond, Broadspire filed this current motion for leave to amend to add a counterclaim pursuant to

Rule 15(a), Fed R. Civ. P. Broadspire is seeking to add a counterclaim for set-off alleging that Plaintiff violated the terms of the ERISA Plan by receiving other income while receiving Plan benefits.

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend the complaint after a responsive pleading has been filed only by leave of court, but requires that such leave "be freely granted when justice so requires." Rule 15(a), Fed. R. Civ. P. That standard was construed by the Supreme Court in Foman v. Davis, 371 U.S. 178, 182 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.--the leave sought should be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court....

See, Duggins v. Steak 'N Shake, 195 F.3d 828, 834 (6th Cir. 1999).

Further, delay alone is not a ground for denying leave to amend. Dana Corp. v. Blue Cross & Blue Shield Mutual, 900 F.2d 882, 888 (6th Cir. 1990). The party opposing leave to amend must demonstrate significant prejudice. Duggins, 195 F.3d at 834; Moore v. City of Paducah, 790 F.2d 557, 562 (6th Cir. 1986). The Court determines prejudice by considering

> whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.

Phelps v. McClellan, 30 F.3d 658, 662-63 (6th Cir. 1994). The longer the period of unexplained delay, the lesser the burden of demonstrating prejudice. Id. Courts have frequently found prejudice where the amendment is made after the discovery deadline has passed, Duggins v. Steak 'N Shake, 195 F.3d at 843 (Plaintiff aware for months of basis claim, but did not move to amend until discovery deadline had passed and motion for summary judgment was filed); United States v. Midwest Suspension and Brake, 49 F.3d 1197, 1202 (6th Cir. 1995)(Amendment sought one month before

2005 WL 8161978

trial); *Priddy v. Edelman,* 883 F.2d 438, 446 (6th Cir. 1989); *Janikowski v. Bendix Corporation,* 823 F.2d 945, 952 (6th Cir. 1987),* or on the eve of trial. *Ferguson v. Neighborhood Housing Services, Inc.,* 780 F.2d 549 (6th Cir. 1986). A party who moves to amend late in the lawsuit has "an increased burden to show justification for filing to move earlier." *Wade v. Knoxville Utilities Board,* 259 F.3d 452, 459 (6th Cir. 2001)(Citation omitted). Nonetheless, even amendments made on the eve of trial are permissible when there is no demonstrable prejudice. *United States v. Wood,* 877 F.2d 453, 456-57 (6th Cir. 1989)(Amendment permitted three weeks before trial). Further, even if there is prejudice, the Court may be able to fashion a remedy, such as assessing the moving party the costs of duplicative discovery, which would permit the amendment. *See, Janikowski,* 823 F.2d at 952; *Moore v. Paducah,* 790 F.2d 557, 562 (6th Cir. 1986); *Adkins v. International Union,* 769 F.2d 330, 334 (6th Cir. 1985).

**\*2** This motion has gone unopposed by Plaintiff. Moreover, no prejudice will result from allowing Broadspire to assert the counterclaim. Plaintiff has been on notice of the counterclaim since the February 24, 2005 preliminary pretrial conference.

Finally, because this is an ERISA benefits case discovery is not ordinarily conducted, which lessens any prejudice to the Plaintiff.

Accordingly, Defendant Braodspire's May 16, 2005 unopposed motion for leave to file counterclaim instanter (doc. 16) is **GRANTED**. The Clerk of Court is **DIRECTED** to file a copy of Defendant's counterclaim.

Under the provisions of 28 U.S.C. § 636(b)(1)(A), Rule 72(a), Fed. R. Civ. P., and Eastern Division Order No. 91-3, pt. F, 5, either party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge. The motion must specifically designate the Order, or part thereof, in question and the basis for any objection thereto. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

**All Citations**

Not Reported in Fed. Supp., 2005 WL 8161978

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:20-cv-12924-TLL-PTM ECF No. 26-3, PageID.394 Filed 09/17/21 Page 19 of 29

PCL Const. Services, Inc. v. B & H Contractors of South..., Not Reported in...

2013 WL 1866922

2013 WL 1866922
Only the Westlaw citation is currently available.
United States District Court, D.
South Dakota, Southern Division.

PCL CONSTRUCTION SERVICES,
INC., a Colorado corporation, Plaintiff,

v.

B & H CONTRACTORS OF
SOUTH DAKOTA, INC., a South
Dakota corporation, Defendant
and Third–Party Plaintiff,

v.

George Fischer, Inc.; George Fischer
Sloane, Inc.; Central States Industrial
Supply, Inc.; and CPI Sales, Inc.,
collectively d/b/a Central States
Group, Third–Party Defendants.
B & H Contractors of South Dakota, Inc.,
a South Dakota corporation, Plaintiff,

v.

George Fischer, Inc.; George
Fischer Sloane, Inc.; Central States
Industrial Supply, Inc.; and CPI
Sales, Inc., collectively d/b/a
Central States Group, Defendants.

Civ. Nos. 11–4035–KES, 10–4076.
|
May 2, 2013.

**Attorneys and Law Firms**

Bryant Dale Tchida, Michael G. Taylor, Steven R. Lindemann, Minneapolis, MN, for Plaintiff.

Daniel B. Shuck, Shuck Law Firm, Sioux City, IA, Jason R. Sutton, Paul W. Tschetter, Roger A. Sudbeck, Sioux Falls, SD, for Defendant and Third–Party Plaintiff.

William P. Fuller, Derek Andrew Nelsen, Sioux Falls, SD, for Defendants.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

KAREN E. SCHREIER, District Judge.

**\*1** Plaintiff, PCL Construction Services, Inc., moves the court for summary judgment on its claims for breach of contract and negligence against defendant and third-party plaintiff, B & H Contractors of South Dakota, Inc. PCL argues that the evidence on the record proves its claims as a matter of law, or alternatively, the indemnification provision found in the contract between the parties makes B & H liable for all damages PCL has suffered with respect to its claims. B & H opposes the motion. For the following reasons, PCL's motion is denied.

**BACKGROUND**

PCL is a Colorado corporation and serves as a contractor for construction projects. B & H is a South Dakota corporation and does plumbing installation work.

PCL was hired by 3M Company to serve as the general contractor for a construction project that took place at 3M's manufacturing plant in Brookings, South Dakota. PCL then entered into a subcontract with B & H that required B & H to install the plumbing and piping for the project.

The subcontract required B & H to "provide and furnish all labor, materials, tools, supplies, equipment, services, facilities, supervision and administration necessary for the proper and complete" installation of the piping system. Docket 67–1 at 2. The subcontract also required B & H to perform its work in a "skillful and workmanlike manner, with material and equipment being of the kind and grade necessary for the purpose intended." Docket 67–1 at 5. An indemnification provision was included in the subcontract, which read as follows:

[B & H] shall defend, indemnify, and hold harmless [PCL], Owner, Architect, Engineer, their sureties, consultants, and all persons indemnified by [PCL] pursuant to the Prime Contract, and all parents, subsidiaries, affiliates, agents and employees of any of them (the "Indemnitees") from and against any and all claims, liabilities, liens, costs, damages, citations, penalties, fines, attorneys' fees, losses, and expenses of whatever nature (the "Indemnified Claim")

Case 1:20-cv-12924-TLL-PTM  ECF No. 26-3, PageID.395  Filed 09/17/21  Page 20 of 29

PCL Const. Services, Inc. v. B & H Contractors of South..., Not Reported in...

2013 WL 1866922

arising out of or resulting from [B & H's] performance of or failure to perform the Subcontract Work or [B & H's] obligations under the Subcontract ... regardless of whether or not the indemnified Claim is caused in part by one or more Indemnitees, but only to the extent caused in whole or in part by breach of the Subcontract or by negligent or otherwise wrongful acts or omissions of [B & H], [B & H's] sub-subcontractors, suppliers, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable. Such obligation ... shall survive the completion of the Project and final payment to [B & H].

Docket 82–7 at 2.

B & H ordered and installed PPro Seal piping materials that were manufactured by George Fischer, Inc. and supplied by Central States Industrial Supply, Inc. (the "GF product"). Before installing the GF product, B & H's lead installer received over-the-phone training from George Fischer personnel. After receiving the instructions, B & H began installing the GF product. PCL was present during the installation process. There were at least a dozen leaks that occurred throughout the installation process. Upon completion of the installation work, the piping system was inspected and air tested. PCL participated in and monitored both the inspection and testing of the system. The piping system passed the air test, indicating 100 percent joint integrity.

**\*2** Leaks began to form following B & H's completion of the installation. The first leak that formed in a completed portion of the piping system occurred in October of 2007, while B & H was still working on a different section of the system. B & H repaired this leak. B & H completed the entire installation in February of 2008. A second leak was found in September of 2008. B & H again repaired the leak, and B & H's insurance carrier paid for most of the damage caused by the leak. A third leak was discovered in March of 2010. PCL notified B & H of the leak and demanded that B & H repair the leak and pay for any damage caused by the leak. B & H refused to repair the leak or reimburse PCL for any costs incurred for repairing the leak or for damage caused to the 3M facility.

Because of these leaks, 3M informed PCL that it wanted an entirely new piping system installed to avoid any future problems. PCL demanded that B & H replace the piping system. In the meantime, a fourth leak was discovered in January of 2011. PCL then contracted with Redlinger Bros. Plumbing and Heating to remove and replace the entire piping system. A fifth leak was discovered during

the demolition process that took place in preparation for Redlinger's installation.

PCL incurred costs totaling $171,445.50 to repair the five leaks, reimburse 3M for damage caused to its property, and replace the entire piping system. PCL now seeks damages from B & H and is alleging claims for breach of contract and negligence.

## STANDARD OF REVIEW

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of her case on which she bears the ultimate burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.,* 415 F.3d 908, 910 (8th Cir.2005) (quoting *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995)).

Summary judgment is precluded if there is a dispute in facts that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588 (1986).

Because this is a diversity action, the court applies the law of the state in which it sits. *Prudential Ins. Co. of Am. v. Kamrath,* 475 F.3d 920, 924 (8th Cir.2007). Thus, South Dakota law applies to PCL's claims. Under South Dakota law, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed[.]" SDCL 53–1–4. The contract here was performed in South Dakota, meaning that South Dakota law governs PCL's breach of contract claim. The parties do not dispute that South Dakota law applies to the contract claim.

**\*3** Separately, "South Dakota employs the most significant relationship test when determining choice of law questions" involving tort claims. *Burhenn v. Dennis Supply Co.,* 685

PCL Const. Services, Inc. v. B & H Contractors of South..., Not Reported in...

2013 WL 1866922

Case 1:20-cv-12924-TLL-PTM ECF No. 26-3, PageID.396 Filed 09/17/21 Page 21 of 29

N.W.2d 778, 784 (S.D.2004). Under the most significant relationship test, the court assumes and the parties do not dispute that South Dakota law applies to PCL's negligence claim.

## ANALYSIS

PCL argues that summary judgment should be granted on its claims for breach of contract and negligence because B & H's defective installation work caused the pipes to leak or, alternatively, because B & H must fully indemnify PCL for the costs incurred to fix and replace the pipes under the terms of their contract.

## I. Cause of the Leaky Pipes

PCL argues that B & H breached its contract with PCL when B & H negligently installed the piping system. Furthermore, PCL asserts that it did not contribute in any manner to cause the leaks in the pipes. Therefore, PCL argues that it is entitled to summary judgment on its claims for breach of contract and negligence.

To prevail on its breach of contract claim, PCL must establish (1) an enforceable promise, (2) breach of the promise, and (3) resulting damages. *Weitzel v. Sioux Valley Heart Partners,* 714 N .W.2d 884, 894 (S.D.2006). To prevail on its negligence claim, PCL must establish that (1) B & H owed PCL a duty, (2) the duty was breached, and (3) PCL suffered injuries as a result of B & H's breach of its duty. *Bordeaux v. Shannon Cnty. Sch.,* 707 N.W.2d 123, 127 (S.D.2005). Summary judgment is generally not feasible in negligence cases. *Casillas v. Schubauer,* 714 N.W.2d 84, 88 (S.D.2006).

PCL alleges that B & H breached its contract because it failed to "provide and furnish all labor and materials and supervision necessary for the proper installation of the piping system" and because it failed to "perform its work in a skillful and workmanlike manner, with material and equipment being of the kind and grade necessary for the purpose intended." Docket 66 at 9–10 (internal quotations omitted). Similarly, PCL alleges that these aforementioned failures form the basis for its negligence claim.

Whether for purposes of PCL's breach of contract theory or its negligence theory, the relevant issues here are who and what caused the leaks in the piping system. If B & H can demonstrate that a genuine issue of material fact exists on

these issues, then summary judgment cannot be granted in PCL's favor on either of its claims.

B & H has submitted an expert report from Dr. McKeighan, a manager in the mechanical engineering practice at Exponent, Inc., a scientific and engineering consulting firm dedicated primarily to the analysis and prevention of failures. Docket 69–3 at 2. In his report, Dr. McKeighan asserts that "the most notable workmanship issues were not associated with the leak. This observation appears counter to the notion that leakage and workmanship are directly linked." *Id.* at 7. He goes on to state that "no document or report produced in this matter present or reference any normative standard of care that suggests the B & H workmanship is not within the range of expected installer variation." *Id.* He notes that "the [George Fischer] Reports ... suggest[ ] that the type of workmanship observed herein is not uncommon." *Id.*

**\*4** Dr. McKeighan further notes that identifying the cause of the leakage "requires an extensive scientific-based examination of the role of manufacturing, installation, and operational variables on the performance and integrity of the pipe fusion process" and that no such examination has taken place. *Id.* "No evidence has been produced to date that definitively links any ... workmanship issues to pipe joint failure rates or premature joint failure." *Id.* at 8. Moreover, Dr. McKeighan opines that the fact that the pipe system passed a leak test indicating 100 percent joint integrity goes against any argument that B & H's workmanship was the cause of the failure. *Id.* He summarily opines that the "root cause of joint leakage (and hence failure) is indeterminate. The mere observation of non-optimum installation methods is not sufficient to identify it as the sole, root cause of failure." *Id* . at 9.

Furthermore, there has been evidence introduced that suggests that the GF product was defective for the purpose for which it was used. Dr. McKeighan asserts that the product was defective because it is overly sensitive to installation variables, and such defect was "exacerbated by improper installation instructions[.]" Docket 80 at 2. If the product was defective, then it seems that B & H's workmanship may not have been the cause of the leaks and PCL's resulting damages.

PCL argues that even if the product was the cause of the leaks, B & H is liable because it chose the GF product. But there is a dispute as to whether B & H chose the GF product or if PCL actually chose the GF product. Paul Cohrs, B & H's job superintendent for the project, claims that PCL specified that

Case 1:20-cv-12924-TLL-PTM ECF No. 26-3, PageID.397 Filed 09/17/21 Page 22 of 29

PCL Const. Services, Inc. v. B & H Contractors of South..., Not Reported in...

2013 WL 1866922

the GF product was to be used for the project. Docket 81 at 2. Thus, there exists a genuine issue of material fact on the issue of who chose to use the GF product.

In summary, there exists questions of fact on the issues of who and what caused the leaks in the pipes. Because there are questions of fact on these issues, the court cannot find, as a matter of law, that B & H is liable to PCL under either PCL's breach of contract claim or its negligence claim.

## II. Indemnification

Alternatively, PCL argues that summary judgment should be granted in its favor because of the indemnification provision found in the contract. The indemnification provision reads as follows:

> [B & H] shall defend, indemnify, and hold harmless [PCL], Owner, Architect, Engineer, their sureties, consultants, and all persons indemnified by [PCL] pursuant to the Prime Contract, and all parents, subsidiaries, affiliates, agents and employees of any of them (the "Indemnitees") from and against any and all claims, liabilities, liens, costs, damages, citations, penalties, fines, attorneys' fees, losses, and expenses of whatever nature (the "Indemnified Claim") arising out of or resulting from [B & H's] performance of or failure to perform the Subcontract Work or [B & H's] obligations under the Subcontract ... regardless of whether or not the indemnified Claim is caused in part by one or more Indemnitees, but only to the extent caused in whole or in part by breach of the Subcontract or by negligent or otherwise wrongful acts or omissions of [B & H], [B & H's] sub-subcontractors, suppliers, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable. Such obligation ... shall survive the completion of the Project and final payment to [B & H].

**\*5** Docket 82–7 at 2.

Indemnification provisions are allowed in contracts under South Dakota law. "Where the subcontractor expressly agrees to indemnify the contractor for all damages, he is bound by the terms of his contract." *Schull Constr. Co. v. Koenig,* 121 N.W.2d 559, 562 (1963). But "[c]ontracts of indemnity are

strictly construed in favor of a subcontractor as against the contractor[.]" *Id.* "An indemnity contract is to be construed according to the clear and unequivocal expression of the parties' intent embodied in the ordinary meaning of the words used." *Becker v. Black & Veatch Consulting Eng'rs,* 509 F.2d 42, 46 (8th Cir.1974) (citing South Dakota law).

It is unnecessary to thoroughly analyze the language of the indemnification provision at this time because both parties agree that there needs to be a determination as to who and what was the cause of the leaks before the indemnity provision can take effect. Docket 78 at 16 ("The factual question of causation is a prerequisite to determining whether this indemnity provision applies in this case."); Docket 89 at 12 ("The only question that this Court needs to decide is whether B & H or its suppliers played any role in causing the leaks and damage."). Undoubtedly, the issues of who and what caused the leaks are factual determinations. Such determinations are left to the fact finder and are inappropriately made at the summary judgment stage if the material facts are in dispute. As discussed in the prior section, there are disputes regarding the material facts. Because there are disputed material facts, the court cannot find B & H liable to PCL as a matter of law. Thus, PCL's motion for summary judgment is denied.

## CONCLUSION

B & H has demonstrated on the record the existence of specific facts that create a genuine issue for trial on PCL's claims for breach of contract and negligence. These same disputed facts preclude the court, at this time, from applying the indemnification provision found in the contract between the parties. Accordingly, it is

ORDERED that PCL's motion for summary judgment (Docket 64) is denied.

### All Citations

Not Reported in F.Supp.2d, 2013 WL 1866922

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4772715
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Kenneth ROGERS, Plaintiff,

v.

BRODER AND SACHSE REAL ESTATE

SERVICES INC., et al., Defendants.

No. 14–CV–11084.
|
Signed Sept. 24, 2014.

**Attorneys and Law Firms**

Caitlin E. Malhiot, Gold Star Law, PC, Troy, MI, for Plaintiff.

Daniel W. Rucker, Steve J. Weiss, Hertz, Schram, Bloomfield Hills, MI, for Defendants.

***ORDER GRANTING DEFENDANTS' MOTION TO AMENDED THEIR ANSWER AND TO ADD COUNTERCLAIM (Doc. # 17)***

VICTORIA A. ROBERTS, District Judge.

**I. INTRODUCTION**

 **\*1** Broder and Sachse Real Estate Services ("Broder and Sachse") employed Plaintiff Kenneth Rogers. The other Defendants are Wendy Barnabei, the General Manager of Broder and Sachse, and Renee Sheena, its Assistant Regional Manager. Rogers alleges he worked numerous hours of overtime and Broder and Sachse failed to sufficiently compensate him, in violation of the Fair Labor Standards Act ("FLSA"). Defendants answered Roger's Complaint, but they now seek to amend certain paragraphs of their Answer and add two counterclaims under Rule 15(a)(2) of the Federal Rules of Civil Procedure ("F.R.C.P."). Rogers agrees Defendants can amend their Answer; however, he opposes the addition of the counterclaims; he believes that adding them would be an exercise in futility.

The Court **GRANTS** Defendants' Motion to Amend Their Answer And To Add Counterclaim.

**II. DISCUSSION**

**A. Motion to Amend Answer**
Under F.R.C.P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and, the court should "freely give leave when justice so requires." Generally, if an adverse party agrees to allow the other party to amend a pleading under F.R.C.P. 15(a)(2), the court does not have discretion to deny the amendment. *Fern v. United States,* 213 F.2d 674, 677 (9th Cir.1954). However, even without written consent, the court has discretion to grant or deny leave to amend.

Defendants say Rogers consented to their proposed amended answer. However, they fail to submit Roger's alleged written consent to the Court. Tellingly, Rogers does not oppose Defendants' proposed amendment in his response to Defendants' Motion to Amend.

Since Rogers does not contest amendment, and the Court has the discretion to freely give leave to amend, the Court grants Defendants' Motion to amend paragraphs 7, 9, and 10 of their Answer.

**B. Motion to Add Counterclaim**
"Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial," and leave to amend should be freely given. *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 598 (5th Cir.1981); F.R.C. P. 15(a)(2).

Grounds for denying leave to amend include "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 538 (9th Cir.1989) *quoting Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Rogers relies on futility in his opposition to the addition of counterclaims. An amendment is futile if "the amendment could not withstand a rule 12(b)(6) motion to dismiss." *Riverview Health Inst., LLC v. Med. Mut. of Ohio,* 601 F.3d 505, 512 (6th Cir.2012). Therefore, a court "must construe the complaint in the light most favorable to the [non-moving party], [and] accept all well pled factual allegations as true." *Maxwell v. Corr. Med. Servs., Inc.,* 538 F. App'x 682, 690 (6th Cir.2013). "The factual allegations must be enough to raise a

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 1

2014 WL 4772715

right of relief above the speculative level and to state a claim to relief that is plausible on its face, [and] the factual content must enable the court to draw the reasonable inference that the party is liable for the misconduct alleged." *Id.* at 691.

**\*2** Defendants seek to add two counterclaims. The first is for unjust enrichment. Defendants allege Rogers wrongfully retained money that he did not earn while employed by Broder and Sachse. The second counterclaim alleges conversion— Defendants say Rogers converted funds by failing to return the unearned overpayment.

Unjust enrichment is the retention of money or benefits which in justice and equity belong to another. *Tkachik v. Mandeviller,* 487 Mich. 38, 47, 790 N.W.2d 260 (2010). The "party is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." *Hoving v. Transnation Title Ins., Co.,* 545 F.Supp.2d 662, 669 (E.D.Mich.2008). For motions to dismiss, " 'If reasonable minds could differ whether the alleged retention of benefit is unjust, then dismissal is inappropriate." *Id.* at 670.

Conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Thoma v. Tracy Motor Sales, Inc.,* 360 Mich. 434, 438, 104 N.W.2d 360 (1960). Conversion is an intentional tort since the converter's actions are wilful; however, conversion can be committed unwittingly if the converter is unaware of another's outstanding property interest. *Foremost Ins., Co. v. Allstate Ins., Co.,* 439 Mich. 378, 391, 486 N.W.2d 600 (1992). A conversion action based upon money requires an obligation on the part of the defendant to return the specific money entrusted to his care even if the money is not specifically earmarked for its

return. *Citizens Ins. Co. v. Delcamp Truck Center, Inc.,* 178 Mich.App. 570, 575, 444 N.W.2d 210 (1989).

In the proposed counterclaims for unjust enrichment and conversion, Defendants allege Broder and Sachse paid Rogers $1,384.62 for work he did not perform, and Rogers kept the money. Rogers allegedly admits that the payment of $1,384.62 was not intended to compensate him for any overtime pay. As a result, Defendants contend that Rogers was unjustly enriched by $1,384.62. Furthermore, Defendants allege that by retaining the unearned overpayment, Rogers is liable for conversion.

Construing the allegations as true and most favorable to the Defendants, the Court finds that Defendants proposed counterclaims are not futile and they allege enough factual matter for the Court to determine that the allegations are plausible. Rogers may have received $1,384.62 from Defendants that he did not earn and which he kept. A jury could find that Rogers was unjustly enriched and liable for conversion, even if it was not his intention to do so. These allegations would survive a motion to dismiss under F.R.C.P. 12(b)(6), and the proposed counterclaims are not futile.

### III. CONCLUSION

The Court **GRANTS** Defendants' Motion to Amend Their Answer And To Add A Counterclaim. The Amended Answer and Counterclaim must be filed no later than Wednesday, October 8, 2014.

### IT IS ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2014 WL 4772715

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:20-cv-12924-TLL-PTM    ECF No. 26-3, PageID.400    Filed 09/17/21    Page 25 of 29
Sazerac Brands, LLC v. Peristyle, LLC, Not Reported in Fed. Supp. (2017)
2017 WL 7805582

2017 WL 7805582
Only the Westlaw citation is currently available.
United States District Court, E.D. Kentucky,
Central Division.
Frankfort.

SAZERAC BRANDS, LLC, Plaintiff,

v.

PERISTYLE, LLC, Defendant.

CIVIL ACTION NO. 3:15-cv-76-GFVT-EBA
|
Signed 01/25/2017

**Attorneys and Law Firms**

Bradley Scott Zoppoth, Scott P. Zoppoth, The Zoppoth Law Firm, Louisville, KY, Brendan J. Hughes, Jane L. Van Benten, Joshua M. Siegel, Mary J. Klumpp, Michael J. Klisch, Morgan A. Champion, Peter J. Willsey, Rebecca Givner-Forbes, Shane M. Rumbaugh, Vincent J. Badolato, Cooley LLP, Washington, DC, Michael J. Mortorano, Cooley LLP, Reston, VA, for Plaintiff.

**ORDER**

Edward B. Atkins, United States Magistrate Judge

**I. INTRODUCTION**

*1  This matter is before the undersigned regarding Plaintiff Sazerac's Motion to Strike. [R. 66]. Plaintiff moves the Court to strike Amended Counterclaims filed by Defendant Peristyle.

**II. BACKGROUND**

On October 27, 2015, Sazerac filed its original Complaint in this action. [R. 1]. Peristyle then filed its Answer and Counterclaims on November 17, 2015. [R. 20]. Sazerac filed a motion seeking leave to file its First Amended Complaint on June 14, 2016, [R. 36], and that motion was granted. [R. 47]. Subsequently, Sazerac sought to again amend its complaint and was granted leave to do so by the Court. [R. 51]. Peristyle then filed its Answer to Second Amended Complaint

on August 15, 2016, [R. 55], asserting new counterclaims. Peristyle then filed a Corrected Answer, adding a prayer for relief and an additional exhibit. [R. 56]. Sazerac now moves the court to strike Peristyle's Counterclaims [R. 55] and its Corrected Amended Counterclaims [R. 56].

Sazerac argues that that Federal rule of Civil Procedure 15 allows a party to amend its pleading to add a counterclaim only with the opposing party's written consent or the court's leave. Since Peristyle obtained neither here, Sazerac concludes that the added counterclaims are impermissible under the Rules. Peristyle counters by arguing that its added counterclaims are appropriate as a response to Sazerac's Amended Complaint, and that the motion to strike should be denied if the Court would grant Peristyle leave to amend its defenses and counterclaims *ex post facto*.

**III. DISCUSSION**

Rule 15 provides for the amendment of pleadings. Specifically, Rule 15(a) allows for: (1) amendment as a matter of course or (2) amendment with opposing counsel's consent or leave of court. Fed. R. Civ. P. 15(a). Here, it is undisputed that Peristyle's Amended Answer and Counterclaims were not filed under any approved method of Rule 15.

Despite its failure to strictly abide by Rule 15 when it filed its amended answer and counterclaims, Peristyle argues that various federal courts have permitted the addition of counterclaims in response to amended complaints. Peristyle describes three different approaches applied by federal courts in this context—the "permissive approach," "narrow approach," and "moderate approach." [R. 72 at 6]. A wide range of different approaches have been applied by courts regarding this issue. One court even noted that "[t]he case law addressing this particular situation ... is all over the map." Pereira v. Cogan, No. 00-CV-619-RWS, 2002 WL 1822928, at *2 (S.D.N.Y. Aug. 7, 2002). And indeed, the case law on this issue varies significantly. *See* Am. Home Prods. Corp. v. Johnson & Johnson, 111 F.R.D. 448, 453 (S.D.N.Y. 1986) (applying a "permissive approach," allowing a defendant served with an amended complaint to file to amend its answer without leave of court, regardless of the scope of the changes in the amended complaint); Nolan v. City of Yonkers, No. 92-CV-6067-KMW, 1996 WL 120685, at *4 (S.D.N.Y. Mar. 19, 1996) (applying a more narrow approach, wherein such counterclaims are permitted as of right only if they directly relate to the changes in the amended complaint); Tralon Corp.

Case 1:20-cv-12924-TLL-PTM   ECF No. 26-3, PageID.401   Filed 09/17/21   Page 26 of 29
Sazerac Brands, LLC v. Peristyle, LLC, Not Reported in Fed. Supp. (2017)
2017 WL 7805582

v. Cedarapids, Inc., 966 F. Supp. 812, 832 (N.D. Iowa 1997) (applying a "moderate" approach, allowing counterclaims without leave of court if amended complaint changes the theory or scope of the case). Moreover, the parties' briefing of the issue cites to no controlling Sixth Circuit authority governing the instant dispute.

 **\*2** Here, it is unnecessary to attempt to resolve this extensive and unsettled area of law. Instead, the Court will consider Peristyle's Amended Answer and Counterclaims as properly introduced because leave to amend would have been granted had it been sought and it does not appear that either party will be prejudiced by allowing the change. Other courts have taken similar approaches. *See* Helton v. Am. Gen. Life Ins. Co., No. 4:09-CV-118-M, 2010 WL 3516431, at \*3 (W.D. Ky. Sept. 1, 2010). Importantly, Rule 15 encourages courts to freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a) (2).

The counterclaims that Sazerac moves to strike consist of (1) Federal False Designation of Origin; (2) Federal False Advertising; and (3) Common Law Unfair Competition. All of these counterclaims relate to the use of a depiction of the building located on Peristyle's property on the label of Sazerac's Old Taylor whiskey—the same building that

provides, in part, a basis for many of Sazerac's Trademark Infringement claims. The factual overlap here is sufficient that trying the counterclaims in this action will promote judicial efficiency and cause no prejudice to either party. The alternative would be to strike the counterclaims as requested by Sazerac and require Peristyle to refile those claims in a separate law suit. Here, there is no compelling reason to needlessly expend judicial resources by requiring a separate law suit concerning this already lengthy litigation. Permitting the amendment without formal application to the court under these circumstances is in keeping with the overall liberal amendment policy of Rule 15(a) and the general desirability of minimizing needless formalities.

### IV. CONCLUSION

Based on the foregoing, and the Court being otherwise sufficiently advised, IT IS HEREBY ORDERED THAT Plaintiff's Motion to Strike [R. 66] is DENIED.

### All Citations

Not Reported in Fed. Supp., 2017 WL 7805582

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:20-cv-12924-TLL-PTM ECF No. 26-3, PageID.402 Filed 09/17/21 Page 27 of 29
Visteon Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA., Not Reported in...
2008 WL 251985

2008 WL 251985
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

VISTEON CORP., Plaintiff,

v.

NATIONAL UNION FIRE INS. CO.
OF PITTSBURGH, PA., Defendant.

Civil Action No. 07-12250.
|
Jan. 30, 2008.

**Attorneys and Law Firms**

Todd R. Mendel, Barris, Sott, Detroit, MI, Nader R. Boulos, Kirkland & Ellis, Chicago, IL, for Plaintiff.

Harvey R. Heller, Jennifer M. Grieco, Julie C. Mayer, Steven M. Wolock, Maddin, Hauser, Southfield, MI, for Defendant.

***OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO AMEND PLEADINGS AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXTEND DISCOVERY AND TO TAKE UP TO FIFTEEN DEPOSITIONS AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY BRIEF***

MONA K. MAJZOUB, United States Magistrate Judge.

**\*1** This matter comes before the Court on several discovery motions. The first is Defendant's Motion to Amend Pleadings (docket no. 29) filed on December 20, 2007. The second is Defendant's Motion to Extend Discovery and to Take up to Fifteen Depositions (docket no. 30) filed on December 21, 2007. The final motion is Plaintiff's Motion for Leave to File a Sur-Reply Brief filed on January 28, 2008. (Docket nos. 45, 46). Each party has responded to the other's motion, with the exception of the Motion for Leave to File a Sur-Reply Brief. These motions have been referred to the undersigned for decision. (Docket no. 35). The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(e). These motions are now ready for ruling.

**1. Facts**
Plaintiff Visteon Corp. claims that Defendant National Union Insurance Co. owes it coverage based on two insurance contracts with respect to a $16 million settlement that it entered into in 2002 with 42 female employees of Plaintiff. Defendant denied coverage based on several grounds. The parties are now conducting discovery. Under the present scheduling order all discovery is to be completed by January 31, 2008, and the deadline for filing motions is February 15, 2008. (Docket no. 14). By these motions, Defendant seeks leave to conduct up to fifteen depositions which is five more than is allowed without leave of court under Fed.R.Civ.P. 30(a)(2)(A). (Docket no. 30). Defendant also seeks an extension of the discovery deadlines of up to ninety days. (Docket no. 42). Finally, Defendant seeks leave to amend its Answer to add affirmative defenses of material breach and that the settlement was unreasonable in amount. Defendant also seeks leave to amend its Answer to more specifically allege that Plaintiff failed to comply with certain conditions precedent imposed by the applicable insurance policies. (Docket no. 29).

**2. Standard**
Rule 30(a) (2)(A), Fed.R.Civ.P., provides that a party must obtain leave of court if it wishes to conduct more than ten depositions. Such leave "shall be granted to the extent consistent with the principles stated in Rule 26(b)(2)." Fed.R.Civ.P. 30(a)(2). Rule 26(b)(2) directs the Court to consider such factors as the burdensomeness and expense of the discovery compared to its likely benefit, whether the party has had ample opportunity to obtain the information sought, and whether the discovery sought is unreasonably cumulative or duplicative. Courts generally require a particularized showing of necessity from the party requesting additional depositions for each additional deposition. *See Lewis v. Mt. Morris Twp.,* 2007 WL 2902890 (E.D.Mich. Sept.28, 2007).

A showing of good cause is required to modify the court's scheduling order. Fed.R.Civ.P. 16(b).

Leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Leave to amend may be denied when the proposed amendment would be futile, however. *See Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 569 (6th Cir.2003). The appropriate test to decide whether a proposed amendment is futile is identical to the one used when considering the sufficiency of a pleading under Rule 12(b)(6). *Thiokol Corp. v. Department of Treasury, State of*

Case 1:20-cv-12924-TLL-PTM ECF No. 26-3, PageID.403 Filed 09/17/21 Page 28 of 29
Visteon Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA., Not Reported in...
2008 WL 251985

*Mich. Revenue Div.,* 987 F.2d 376, 382-83 (6th Cir.1993). To deny a motion for leave to amend, the court must find at least some significant showing of prejudice to the opponent. *Moore v. City of Paducah,* 790 F.2d 557, 562 (6th Cir.1986).

### 3. Analysis

#### A. More than Ten Depositions
**\*2** Defendant seeks leave to take the depositions of: (1) "several more of the underlying claimants;" (2) Visteon employee Andrea Simon who will supposedly testify that Ms. DiBattiste was mistaken when she claimed that she disclosed and investigated ten of the claimants; (3) Chuck Hudson, Visteon Human Resources Manager; and (4) Sophie McGuire, a settlement specialist hired by the Willie Gary law firm for the Visteon case. (Docket no. 42 at 2-4). Defendant has not identified the underlying claimants or shown what testimony is required from them. Defendant has also failed to identify why it is necessary to depose Chuck Hudson. Finally, Defendant has not shown any reason why the deposition of Sophie McGuire is necessary. Defendant has stated that it believes Andrea Simon will clarify the issue of whether ten of the claimants against Visteon were investigated by or on behalf of Visteon. Accordingly, Defendant has made a particularized showing sufficient to justify an expansion of the deposition limit only for Andrea Simon. *See Lewis,* 2007 WL 2902890. Defendant's motion will therefore be granted only to the extent that it will be allowed to depose Andrea Simon in addition to the ten depositions allowed under Rule 30(a)(2)(A). Ms. Simon's deposition must be completed on or before February 29, 2008.

#### B. Motion to Extend Discovery
Defendant must show good cause before this Court may extend the discovery deadlines. Fed.R.Civ.P. 16(b). The parties submitted a joint letter to this Court dated January 25, 2008 in which they state that due to an unforeseen medical development a thirty-day adjournment of the current February 15, 2008 motion cut-off deadline is necessary. In addition, the parties have agreed to schedule depositions for the last two weeks of February. Therefore, in practice the discovery deadline has been extended by about thirty days.

Defendant seeks an additional sixty-day extension of the discovery deadlines beyond this thirty-day extension. (Docket no. 42 at 7). The Court finds good cause for the thirty-day extension already agreed to by the parties. This will also allow Defendant sufficient time to conduct the Simon

deposition. However, Defendant has failed to show good cause warranting an additional extension of the discovery deadlines. Accordingly, Defendant's motion will be granted to the extent that the discovery cut-off date is now February 29, 2008 and the motion cut-off date is now March 15, 2008. The parties may approach Judge Duggan for modification of any of the remaining dates set by the July 23, 2007 scheduling order. (Docket no. 14). Plaintiff's Motion for Leave to File a Sur-Reply Brief on this issue is denied. (Docket nos. 45, 46).

#### C. Leave to Amend Pleadings
The amendments that Defendant seeks to plead in its Answer are clear and well-defined. Leave to amend should be freely given when justice so requires. Fed.R.Civ.P. 15(a). Futility is one basis upon which leave may be denied. However, arguments that a proposed amendment is futile should not be based on disputed facts. *See Thiokol Corp.,* 987 F.2d at 382-83 (applying standard of a motion to dismiss). In determining whether a motion to amend should be granted, the facts pleaded are taken as true. *See Chaz Constr., LLC v.Codell,* 137 Fed. App'x 735, 739-40 (6th Cir.2005).

**\*3** Discovery is not complete in this action. Material facts such as those surrounding the issues of waiver of defenses are sharply disputed by the parties. Based on the facts as alleged by Defendant, this Court cannot at this time find that Defendant's proposed amendments are futile. Moreover, to deny Defendant's motion the Court would have to find significant prejudice to Plaintiff. *Moore,* 790 F.2d at 562. The Court does not find the required prejudice. With regard to Plaintiff's claim that Defendant delayed bringing its motion to amend, the November 15, 2007 letter from Defendant's counsel to Plaintiff's counsel shows that Plaintiff had notice of these requested amendments as of that date. (Docket no. 26, ex. 1). The Court therefore does not find that any delay significantly prejudiced Plaintiff.

Accordingly, the Court will grant Defendant's Motion to Amend Pleadings to the extent that on or before January 31, 2008 Defendant may file an Amended Answer adding the affirmative defenses of material breach and that the settlement was unreasonable in amount. Defendant may also more specifically allege that Plaintiff failed to comply with certain conditions precedent in response to paragraphs 50 and 56 of Plaintiff's Complaint.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Amend Pleadings (docket no. 29) is **GRANTED** to the extent set forth above.

Visteon Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA., Not Reported in...
2008 WL 251985

**IT IS FURTHER ORDERED** that Defendant's Motion to Extend Discovery (docket no. 30) is **GRANTED IN PART** to the extent that the discovery cut-off deadline is now February 29, 2008 and the motion cut-off deadline is March 15, 2008, and Defendant may depose Andrea Simon as its eleventh deposition in this action as set forth above.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Sur-Reply Brief (docket nos. 45, 46) is **DENIED.**

**NOTICE TO THE PARTIES**

Pursuant to Fed.R.Civ.P. 72(a), the parties have a period of ten days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 251985

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.